VOTO DISIDENTE DEL
JUEZ NEGRONI CINTRON
2001DTA 46
San Juan, Puerto Rico, a 13 de noviembre de 2000
Mediante el recurso que no ocupa, la Comisión Estatal de Elecciones (CEE) impugna la Sentencia emitida el 18 de octubre de 2000 por el Tribunal de Primera Instancia, Sala de San Juan, revocando la decisión que el 19 de mayo del mismo año emitiera la primera. En Ésta y ~n lo que respecta al recurso ante nos, determinó que el Municipio de San Juan ("Municipio") violó lo dispuesto en el artículo 8.0001 de la Ley Electoral de Puerto Rico ("Ley Electoral"), 16 L.P.R.A. see. 3351, y el Reglamento para el Control de Gastos de Difusión Pública del Gobierno para las Elecciones Generales de 2000 aprobado el 10 de diciembre de 1999 ("Reglamento de Difusión"), al exhibirle una cinta video magnetofónica de aproximadamente dos minutos y medios, a los empleados públicos del Municipio, en una actividad a la que fueron requeridos a comparecer en el Coliseo Roberto Clemente el 13 de enero de 2000, sin que la referida cinta fuese sometida para su aprobación a la Junta *808 Examinadora de Anuncios de la CEE ("Junta").
La mayoría de este Panel deniega la expedición del auto solicitado, manteniendo así inalterada la sentencia recurrida. Por no poder suscribir tal acuerdo, me veo obligado a disentir.
En el recurso ante nos, se plantea la importante controversia de si, vigente la veda electoral, la exhibición de una cinta video magnetofónica de dos minutos y medios, en la que se realza la imagen de un alcalde que es candidato a un puesto electivo en ese año, ante los miles de empleados municipales que supervisa, citados a una reunión o actividad obligatoria de un municipio, constituye una difusión pública que viola el artículo 8.001 de la Ley Electoral, ante, y el Reglamento de Difusión. Al negarse a revocar la sentencia recurrida, la mayoría de este Panel concluye que no viola el referido Artículo. No comparto esa opinión.
El artículo 8.001 de la Ley Electoral, ante, dispone siguiente:

“Se prohíbe a las agencias del Gobierno de Puerto Rico, la Asamblea Legislativa de Puerto Rico y ala Rama Judicial, que a partir del 1ro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de la celebración de la misma, incurran en gastos para la compra de tiempo y espacio en los medios de difusión pública con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes. Se exceptúan de esta disposición, aquellos avisos y anuncios de prensa expresamente requeridos por ley.

Asimismo, se exceptúan de la anterior disposición aquellos anuncios que sean utilizados para difundir información de interés público, urgencia o emergencia, los cuales sólo serán permitidos previa autorización al efecto de la Comisión Estatal de Elecciones. ”

Como antes indicamos, el 10 de diciembre de 1999, la CE aprobó el Reglamento de Difusión para reglamentar la prohibición establecida por el artículo 8.001 de la Ley Electoral, ante. En su sección 1.4, el Reglamento de Difusión dispone que son medios de difusión "la radio, cine, televisión, periódicos, revistas, publicaciones periódicas, hojas sueltas, rótulos, símbolos, emblemas, fotografías, grabaciones, ya sean en cintas, discos compactos u otros, internet y cualquier otro medio capaz de difundir, propagar y divulgar un mensaje, sea deforma directa o indirecta." (Enfasis nuestro)
También constituyen anuncios, al tenor del artículo 8.001 de la Ley Electoral, ante, las pegatinas, rótulos, zafacones con emblemas, anuncios en los postes, en el centro de un cancha municipal, en los vehículos oficiales y en el timbre del papel oficial del municipio y en camisetas. Miranda v. CEE, 96 J.T.S. 137; P.P.D. v. Gobernador II, 136 D.P.R. 916 (1995).
Ciertamente, el propósito del artículo 8.001 de la Ley Electoral, ante, es que durante el período eleccionario se descontinúe la práctica de las agencias gubernamentales de hacer campaña política mediante la publicación sobre sus logros y planes. C.E.E. v. Departamento de Estado, 134 D.P.R. 927 (1993); Romero Barceló v Hernández Agosto, 115 D.P.R. 368, 393 (1984). Persigue excluir del proceso político partidista la influencia solapada que el partido en el poder puede tener mediante el uso de los anuncios gubernamentales. Coss y U.P.R. v. C.E.E., 137 D.P.R. 877 (1995); Romero Barceló v. Hernández Agosto, ante. Trata de evitar que mediante anuncios gubernamentales, el Estado pueda influenciar en la libre expresión de los ciudadanos en la votación, con el poder económico que éste tiene mediante la utilización de fondos públicos. P.P.D. v. Gobernador I, 136 D.P.R. 860 (1994).
En el análisis final, el propósito de esta disposición es prohibir la utilización de fondos públicos para hacer campaña política. Miranda v. CEE, 96 J.T.S. 137; Marrero v. Municipio de Morovis, 115 D.P.R. 643 (1984). No pueden utilizarse fondos públicos para tomar ventaja indebida y promover su postura. Miranda v. CEE, ante. No es difícil darse cuenta que las campañas políticas a través de los medios de difusión pública, no se *809 realizan solamente demostrando los logros y las obras realizadas por un candidato que ya ejerce un puesto electivo. El proselitismo también se realiza realzando la imagen del candidato destacando sus cualidades personales como su simpatía, su disponibilidad y contacto con la población, su comportamiento en público y demás cualidades que pueden ser observadas a simple vista.
A la luz de esta normativa y perspectiva, opino que el Municipio desacató la prohibición establecida por el artículo 8.001 de la Ley Electoral, ante, aunque no está en controversia que la reunión de los empleados públicos que el Municipio pautó perseguía unos objetivos legítimos. Ciertamente, no existe evidencia que sugiera que la misma fuese con fines proselitistas.
No obstante, la exhibición del video de referencia en esa actividad constituyó la utilización de un medio de difusión, de forma contraria a la prohibición contemplada por el artículo 8.001 de la Ley Electoral, ante, y el Reglamento de Difusión, independientemente de que esa no fuese la intención del Municipio. Tanto la Junta como la CEE concluyeron correctamente que el municipio violó el Artículo 8.001 de la Ley Electoral, ante, al difundir sin la previa aprobación de la CEE, el video de referencia en la actividad a la que se citaron compulsoriamente a todos los empleados municipales, pues no es correcto que los empleados municipales fueran invitados a ésta. Catalogar como intema y privada, es decir, no pública, una reunión de los miles de empleados del Municipio bajo el mismo techo en un coliseo diseñado para recibir miles de personas, es una apreciación desacertada. Esos empleados eran electores sujetos a ser influenciados solapadamente mediante la exhibición del video de referencia que sin lugar a dudas realzaba la imagen de la Alcaldesa de San Juan. No era necesario que el video demostrara los logros o las obras de ésta, su valor proselitista estribaba en la imagen que en el video se ofrecía de dicha funcionaría.
Hemos visto el video de referencia y coincidimos con la descripción que de éste se hace en el Informe rendido por la Junta el 8 de mayo de 2000. A la página 7 de éste, se indica lo siguiente:

“El video, que como se dijo, supra, no tiene narración alguna, y cuya parte auditiva consiste sólo de un trasfondo musical, tampoco incluye texto escrito alguno en la parte visual, juera del título que aparece cuando comienza y de nuevo cuando termina: "Apretando el paso - Municipio de San Juan", junto con el escudo del Municipio. Las imágenes visuales del video son de diversas personas sin identificar llevando a cabo múltiples actividades, y entre otras cosas aparecen en el video gente en la calle sembrando árboles, en diversos salones de clase, en una parada, en grupo bailando, en un gran número de diversas actividades deportivas, en diferentes oficinas; en diferentes partes de lo que podría ser un hospital o un centro médico, en diversas obras de construcción, en grupos cantando, lavando una acera con una manguera de presión, pintando una verja, en muchas diferentes escenas de niños jugando, en una tarima tocando música y cantando, todas esas escenas entremezcladas sin que se pueda percibir ningún patrón lógico en la secuencia, y (excepto por el título que aparece al principio y al final, y que menciona al Municipio de San Juan) sin que haya nada que identifique todo esto con el Municipio, ni con sus empleados.

En toda esa enorme madeja de imágenes visuales, aparentemente inconexas, hay una sola cosa que se repite, intercalada periódicamente desde el principio hasta elfin del video. La Alcaldesa de San Juan aparece nueve veces separadas en el mismo: (1) entregando una placa, (2) cortando una cinta en lo que parece ser algún tipo de inauguración, (3) en una reunión alrededor de una mesa, con ella a la cabeza de la mesa, (4) conversando al aire libre con un pequeño grupo de personas, (5) dando un beso a una señora que le entrega una flor, (6) dando la mano a un señor en un proyecto de construcción, (7) inspeccionando unos gabinetes de cocina, (8) abrazando a un niño, frente a un grupo de otros niños, y (9) pateando una bola en un campo deportivo. ”

Coincido con este Informe en cuanto a que lo determinante no es que el video resalte logros de la Sra. Alcaldesa de San Juan, pues la mayoría de las imágenes no se identifican con este municipio, o con sus empleados. La imágenes pudieron ser gravadas en facilidades públicas o privadas de cualquier otro municipio en Puerto Rico.
*810 El verdadero e insuperable problema del video es que su único foco es la persona de la Alcaldesa, y que el mismo no tiene ningún propósito discernible que no sea el de realzar la figura de ésta. Teniendo en cuenta que la Alcaldesa de San Juan es la actual candidata a la gobernación del Partido Popular Democrático, partido que ella también preside, el video que nos ocupa ilustra lo que no se puede hacer con fondos públicos mientras esté en vigor la veda de anuncios del artículo 8.001 de la Ley Electoral. Informe, página 9.
En tales circunstancias, la grabación de referencia debió someterse a la Junta para su aprobación.
Opino que el tribunal de instancia debió confirmar el dictamen de la CEE aplicándole a este caso su propia norma de que las actividades internas de las agencias de gobierno o instrumentalidades públicas no están excluidas de la veda electoral. En la causa bajo estudio, resulta evidente que el Municipio citó compulsoriamente a sus miles de empleados a una reunión en el Coliseo Roberto Clemente y los expuso a un video que indirectamente resaltaba la imagen de una candidata a la gobernación de Puerto Rico, vigente la veda electoral y sin la aprobación de la Junta. Siendo estos funcionarios electores, elefecto persuasivo del video es innegable y el que Coliseo Roberto Clemente no pudiese ser accesado por otros ciudadanos que no fuesen empleados municipales, no convierte la actividad en una privada y fuerra del alcance del artículo 8.001 de la Ley Electoral, ante.
Por estos fundamentos, expediría el auto solicitado y revocaría la sentencia recurrida.
ANTONIO J. NEGRONI CINTRON
Juez de Apelaciones
ESCOLIO VOTO DISIDENTE DEL JUEZ NEGRONI CINTRON - 2001 DTA 46
1. No está ante nuestra consideración si es válida o no la sanción que la CEE le impuso a la Hon. Sila M. Calderón, como alcaldesa de San Juan por la violación al artículo 8.001 de la Ley Electoral, ante, ordenándole que pagara de su personal peculio el costo de la producción de la cinta video magnetofónica.