MÁXIMO J. CERAME–VIVAS, demandante y apelante, *v.* HON. MANUEL TORRES AGUIAR, SECRETARIO DE SALUD DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y apelado.

*Número:* O-69-179    *Resuelto:* 20 de abril de 1970

*H. Febus Bernardini,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante radicó una petición en el Tribunal Superior, Sala de San Juan, en que alegó que un grupo de empresas industriales, y casas de verano en el área de La Parguera de Lajas, están arrojando sus efluentes y desperdicios a las aguas costaneras sin tratamiento alguno o sin el tratamiento adecuado, haciendo las mismas nocivas a la salud humana, animal, vegetal o de los peces, en contravención de la Ley para el Control de la Contaminación de Aguas (Ley Núm. 142 de 1ro. de mayo de 1950, enmendada en 1952—24 L.P.R.A. secs. 591–601) ; que el Secretario de Salud, apercibido de los actos de contaminación realizados por dichas empresas, se ha negado a tomar las medidas necesarias que provee la ley: que no existe remedio adecuado en ley. Solicitó se ordene al apelado que proceda a radicar las acciones legales que establece la Ley Núm. 142 y en especial el recurso de *injunction.*

El apelado solicitó la desestimación del recurso a lo que accedió el tribunal de instancia porque (1) las causas de acción que surgen de la Ley Núm. 142 son para beneficio del Estado Libre Asociado y no para propietarios o entre particulares y (2) "Una vez fijadas dichas normas sobre contaminación y emitida la orden, es que el Secretario de Salud puede ejercitar la acción de Injunction contra los violadores de dicha orden y reglamentación concediéndole la ley discreción para ejercitar la misma, cuando a su juicio, la gravedad del caso lo amerite. Al disponer el estatuto que podrá emplearse el recurso de injunction cuando la gravedad del caso lo amerite, a juicio del Secretario, el legislador le ha concedido una facultad discrecional a dicho funcionario para actuar o no, lo que hace improcedente la solicitud de

mandamus, de acuerdo con la doctrina jurisprudencial establecida por nuestro Tribunal Supremo."

El apelante nos señala cuatro cuestiones constitucionales y, además, apunta que el tribunal de instancia incidió al concluir que no existe deber ministerial alguno en el Secretario de Salud de radicar el recurso de *injunction* bajo la Ley Núm. 142; al resolver que no procede la acción criminal provista por dicha ley; y al dictaminar que de existir una grave situación de contaminación de las aguas, el Secretario de Salud tiene facultad discrecional para actuar según su criterio.

Las cuestiones constitucionales presentadas son las siguientes:

(1) Que un funcionario ejecutivo carece de discreción alguna por gracia legislativa, para ejercitar y poner en vigor una disposición de rango constitucional y de política pública como es la provista en la sec. 19 del Art. VI de la Constitución de Puerto Rico sobre "la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para beneficio general de la comunidad."

(2) Que la Ley Núm. 142 es inconstitucional en tanto permite normas mínimas de contaminación de las aguas sin que dicha ley establezca normas o guía alguna que regule la acción administrativa, violando así el precepto de separación de poderes.

(3) Que habiéndose promulgado la Ley Núm. 142 con anterioridad a la Constitución, la primera quedó derogada por la segunda al dársele rango constitucional a la conservación de nuestros recursos naturales.

(4) Que al una ley otorgar discreción absoluta y sin límites a un funcionario ejecutivo niega a la comunidad y a sus componentes la igual protección de las leyes y el disfrute del sistema democrático.

Estos planteamientos se discuten someramente en el memorándum del apelante sin acopio alguno de las razones que los fundamentan ni las autoridades que los apoyan. El Procurador General se limita a informarnos la ausencia de validez jurídica de los mismos.

El Art. 5 de la referida Ley Núm. 142 dispone que sería ilegal que persona alguna arroje o derrame en las aguas, materiales que las contaminen. (¹) (24 L.P.R.A. sec. 595.)

El Art. 6 de la referida ley provee para la emisión de órdenes finales por el Secretario de Salud al efecto de que los que estuvieren arrojando agua de albañal o desperdicios industriales o de cualquier otra índole en cualesquiera aguas, dejen de hacerlo (24 L.P.R.A. sec. 596). Estas órdenes se emitirán luego de haberse hecho una determinación de la contaminación indeseable causada. (²)

El Art. 7, además, provee que no se podrá descargar aguas de albañal, desperdicios o de otra índole en las aguas sino mediante la autorización del Secretario de Salud. (³) (24 L.P.R.A. sec. 597.)

---

(¹) "Será ilegal que persona alguna, directa o indirectamente, arroje, descargue, derrame o vierta, o haga o permita que se arroje, descargue, derrame o vierta, en las aguas, materias orgánicas o inorgánicas capaces de contaminarlas o capaces de conducir a que se contaminen en forma tal que se coloquen fuera de las normas mínimas de pureza que el Secretario de Salud establezca según la sec. 599 de este título."

(²) "Cualquier persona que al entrar en vigor las secs. 591 a 601 de este título esté arrojando, descargando, derramando o vertiendo aguas de albañal o desperdicios industriales o de cualquier otra índole a cualesquiera aguas, sin considerar que tal se comenzó o se continuó al amparo de cualquier ley anterior a las secs. 591 a 601 de este título, dejará de hacerlo al recibo de una orden final a ese efecto que el Secretario emita. Disponiéndose, sin embargo, que tal orden final no será emitida sino después de un año de haberse hecho la determinación de la contaminación indeseable así causada y de haberse así notificado a la persona para remediar la situación; salvo que el término de un año no es aplicable cuando exista una urgente amenaza a la salud pública según juicio del Secretario."

(³) "Después de entrar en vigor las secs. 591 a 601 de este título, no podrá hacerse una nueva descarga de aguas de albañal, desperdicios

El Art. 8 de dicha ley dispone que el Secretario dictará los reglamentos necesarios para llevar a cabo los propósitos de dicha ley y que tales reglamentos podrán restringir el contenido de contaminante potencial y prescribir medidas que tiendan a evitar o disminuir tal contaminación. ([4]) (24 L.P.R.A. sec. 598.)

El Art. 9 de la Ley Núm. 142 prescribe que el Secretario de Salud mediante reglamento fijará las normas de contaminación. ([5])

El Art. 10 de la Ley Núm. 142 (24 L.P.R.A. sec. 600), dispone que:

"Las causas de acción que resulten de la violación de las disposiciones de las secs. 591 a 601 de este título o sus reglamentos son para el beneficio del Estado Libre Asociado solamente. No se interpretarán las secs. 591 a 601 de este título en el sentido de crear nuevos derechos para propietarios o entre particulares, ni de ampliar derechos ya existentes. Una deter-

industriales o de cualquier otra índole a las aguas, sino mediante autorización específica para ello emitida por el Secretario, previa solicitud al efecto que deberá hacerse de acuerdo con los reglamentos que el Secretario dicte. Será ilegal que persona alguna, sin haber sometido antes para aprobación del Secretario planos y otros informes, y sin haber obtenido autorización para ello, construyere o instalare o en forma alguna hiciere una descarga para verter o descargar aguas de albañal o desperdicios industriales o de otra índole a las aguas, o hiciere cambios, ampliaciones, reconstrucción o alteración a cualquier sistema o parte de sistema existente, u operare un sistema nuevo o uno ya existente y que haya sido cambiado, ampliado, reconstruido o alterado sin previa autorización."

([4]) "El Secretario dictará de acuerdo con el procedimiento fijado en la sec. 179 del Título 3, los reglamentos necesarios para llevar a cabo los propósitos de las secs. 591 a 601 de este título. Los reglamentos así dictados podrán restringir el contenido de contaminante potencial en cualquier substancia a ser arrojada, descargada, derramada o vertida a cualesquiera aguas, y prescribir medidas que tiendan a evitar o disminuir tal contaminación."

([5]) "Mediante reglamento, el Secretario fijará las normas sobre contaminación máxima que será permitida o tolerada en las aguas de acuerdo con el uso público o privado que de ellas se haga o pueda hacerse, y fijará el caudal mínimo que, dentro de circunstancias normales, o anormales, que puedan ser previstas, ha de fluir en las corrientes."

minación del Secretario al efecto de que existe tal o cual contaminación o de que hay violación de cualquiera de las disposiciones de las secs. 591 a 601 de este título o los reglamentos— sean o no procesables por el Estado Libre Asociado—no creará argumentos de ley o de hecho para beneficio de quien no sea el Estado Libre Asociado."

El Art. 11 (24 L.P.R.A. sec. 601) dispone que la persona que realice uno o más de tales actos de contaminación luego de recibir orden final al efecto de dejar de hacerlo provisto en el Art. 6 de dicha ley, será castigada con multa no menor de $100, no mayor de $1,000, o cárcel por un término no menor de 90 días ni mayor de un año, por cada violación; disponiéndose que podrá emplearse el recurso de *injunction* contra cualquier persona que incurra en violación de los preceptos de dicha ley "cuando la gravedad del caso lo amerita a juicio del Secretario".

En 24 de diciembre de 1968 fue aprobado el Reglamento Sanitario Núm. 131 para establecer por vía de enmiendas, y en efecto establece, las disposiciones y normas de Calidad de las Aguas costaneras de Puerto Rico según lo dispuesto en el Art. 8 de la Ley Núm. 142. En síntesis prohíbe el derrame en aguas costaneras de desagües domésticos o industriales que coloquen dichas aguas fuera de las normas mínimas de calidad o pureza establecidas por este reglamento. El Secretario podrá autorizar tales descargas cuando las substancias que se viertan en las aguas hayan sido sometidas a un grado adecuado de tratamiento.

██ Un estatuto es y se presume constitucional hasta que resolvamos lo contrario. Debe dársele una interpretación razonable consistente con el propósito legislativo y evitarse la interpretación literal que resulte en consecuencias absurdas. *Esso Standard Oil* v. *A.P.P.R.*, 95 D.P.R. 772, 783 (1968).

██ La garantía constitucional establecida por la sec. 19 del Art. VI de la Constitución de Puerto Rico no se limita a la eficaz conservación de nuestros recursos naturales, sino que

también incluye su desarrollo y mayor aprovechamiento, de manera que no podemos convenir con el apelante que la Ley Núm. 142 conflige con dicha garantía sino que, por el contrario, está dirigida a cumplimentarla y darle cabal efectividad.

El Reglamento Núm. 131 no constituye una indebida delegación de poderes. Los Arts. 8 y 9 de la Ley Núm. 142 prescriben las normas y guías que sirven de marco dentro del cual el Secretario ha dictado el Reglamento Núm. 131. *López v. Junta de Planificación*, 80 D.P.R. 646, 661 (1948); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 692 (1953); *McKinley v. United States*, 249 U.S. 397 (1919); *Samora v. United States*, 406 F.2d 1095, 1098 (5th Cir. 1969); *Clayton v. Bennett*, 298 P.2d 533, 535 (Utah 1956); Davis, *Administrative Law Treatise*, Vol. 1, sec. 2.04, pág. 89.

El apelante indica en su petición que el Secretario de Salud se ha negado a tomar las medidas necesarias para evitar la alegada contaminación de las aguas. Podemos inferir que esta alegación conlleva la solicitud de que se provea para que dicho funcionario cumpla con sus obligaciones bajo la Ley Núm. 142 y el Reglamento Núm. 131. A esos efectos, convenimos con el tribunal de instancia que el apelante tiene capacidad (*standing*) para tales fines. [6] También concluimos que la obligación de investigar la calidad de las aguas y de emitir órdenes para lograr el cese de su contaminación son funciones ministeriales impuestas por la Ley Núm. 142 y el Reglamento 131 al Secretario de Salud.

Así mismo concluimos que el Art. 10 de la Ley Núm. 142 no impide que el tribunal de instancia ordene al Secretario de Salud que verifique la calidad de las aguas y, en caso necesario, emita órdenes de cese de su contaminación. Dicho artículo lo que sí impide es que los ciudadanos particu-

---

[6] *Association of Data Processing v. Camp* y *Barlow v. Collins*, resueltos por el Tribunal Supremo Nacional en 3 de marzo, 1970 (38 L.W. 4193 y 4195).

lares radiquen recursos legales en contra de las personas o empresas que se alegan incurren en prácticas de contaminación de las aguas para evitar que continúen dichas prácticas y para sancionarlas.

No aparece del récord, ni el apelante ha alegado en su petición, que el Secretario ha hecho los análisis y tomado aquellas otras medidas necesarias para determinar si las industrias nombradas están arrojando sus efluentes y desperdicios en las aguas costaneras de Puerto Rico sin tratamiento adecuado y de ser cierto que lo hacen, si en efecto afectan la calidad de las aguas especificada en el Reglamento 131 y el grado de tal contaminación.

No es posible que el Secretario tome acción alguna bajo el Art. 11 de la Ley Núm. 142 hasta tanto haya tomado las medidas previamente indicadas. Además, antes de proceder a imponer una de las penalidades indicadas, el Secretario tiene que emitir una orden final prohibiendo la continuación de la práctica de arrojar afluentes y desperdicios al extremo de crear una contaminación indeseable de las aguas costaneras.

Procede, por lo tanto, *devolver el caso al tribunal de instancia para que determine si el Secretario de Salud se ha negado a realizar las pruebas de contaminación de las aguas costaneras en cuestión y, en caso de haberse negado, deberá ordenarle que proceda a hacerlas. En caso que haya determinado que se está ocasionando una contaminación indeseable y que no haya emitido orden alguna para evitarla, deberá ordenarle que proceda de acuerdo con lo dispuesto en el Art. 6 de la Ley Núm. 142.*

El Señor Juez Presidente y el Señor Juez Asociado Señor Dávila no intervinieron. El Juez Asociado Señor Blanco Lugo concurre en el resultado.