*656 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes de epígrafe nos solicitan la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se desestimó la demanda de interdicto preliminar y permanente presentada por éstos.
Por los fundamentos que más adelante exponemos, se modifica la sentencia apelada y así modificada se confirma.
I
Luis Maldonado González y Virgilio Meléndez Dávila, en adelante los apelantes, presentaron ante el Tribunal de Primera Instancia un recurso sobre injunction preliminar y permanente contra la Hon. Gobernadora de Puerto Rico, en representación del Estado Libre Asociado (E.L.A.), el Director Ejecutivo del Departamento de Transportación y Obras Públicas y el Secretario de dicho Departamento. Los apelantes solicitaron que se dictara una orden para que el E.L.A. se abstuviera de imprimir, distribuir y ofrecer ciertas tablillas conmemorativas de la celebración de los cincuenta (50) años de la redacción y adopción de la Constitución del Estado Libre Asociado de Puerto Rico y solicitaron, además, que se ordenara la recolección de las tablillas ya expedidas. Los apelantes alegaron que la expedición de dichas tablillas viola sus derechos constitucionales, y que la reglamentación administrativa vigente no permite el uso de la tablilla en controversia.
El Secretario de Transportación y Obras Públicas contestó la demanda y, entre otros asuntos, solicitó su desestimación por el fundamento de que los apelantes carecían de legitimación activa para instar la presente causa de acción.
Luego de diversos trámites procesales y la presentación de numerosos escritos por las partes, el Tribunal a quo entendió que no había hechos esenciales en controversia y que el pleito podía disponerse por la vía sumaria. El 13 de junio de 2002, emitió la sentencia de la cual se apela ante nos. Conviene, pues, que transcribamos los hechos esenciales no controvertidos, según se plasmaron en la sentencia apelada:

“1. La Ley Núm. 22 de 7 de enero de 2000, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. 5002 et seq., faculta al Secretario del D.T.O.P., (en adelante "el Secretario") a expedir, conjuntamente con el permiso del vehículo de motor o arrastre, las tablillas correspondientes en los casos en que se inscribe, se renueva, se traspasa o se altera el uso de un vehículo de motor o de arrastre. Art. 2.17, 9 L.P.R.A. sec. 5018. La tablilla oficial actualmente usada en los vehículos de motor que transitan en Puerto Rico, lee "Isla del Encanto”.”

2. A tenor con la autoridad así conferida, el Secretario ha aprobado la expedición de numerosas tablillas especiales. Entre las tablillas especiales aprobadas se encuentran varias con diferentes insignias o emblemas, tales como: (a) símbolos tainos indígenas (para Alcalde); (b) signos de figuras representativas del Morro (uso regular); (c) signos con la silueta geográfica de la isla, más la figura de un coche del pasado (para carros históricos de Puerto Rico).

*657
3. Además, a tenor con dicha Autoridad, .el Secretario ha aprobado y expedido un sinnúmero de logos para usos especializados, entre ellos el que otorga el permiso para que la tablilla refleje el nombre del dueño u otra referencia personal. Otros logos especializados que se utilizan son: (a) para Ex prisionero de Guerra; (b) para Cónsul Honorario; (c) para Senador; (d) para Representante; (e) para Alcalde; (f) para Legislador Municipal; (g) para Gobierno; y (h) para Radio aficionado. Bajo dicha autoridad, el Secretario ha diseñado y expedido tablillas especiales para diferentes tipos de vehículos: (a) taxi; (b) remolque; (c) grúa; (d) carga; (e) demostración; (f) arrastre; (g) ómnibus privado; (h) escolar; (i) público; y (j) en una época, para prensa. En el pasado también se han expedido ciertas tablillas conmemorativas, como la de "National Association of Governors" (NAG), cuando el Gobernador Pedro Rossellópresidía dicha organización.

4. La génesis de la tablilla conmemorativa del cincuentenario del Estado Libre Asociado es el Proyecto de la Cámara 838 presentado el 21 de marzo de 2001. El propósito de dicho proyecto de ley era: "para ordenar al Secretario de Trans-portación de Obras Públicas de Puerto Rico confeccionar y expedir una tablilla conmemorativa del Cincuentenario del Estado Libre Asociado de Puerto Rico durante el año 2002 ".

5. La exposición de motivos de la ley establece:

En el 1952, el pueblo de Puerto Rico redactó su primera y única Constitución organizándose políticamente sobre una base democrática. Con la aprobación de la Constitución se creó como cuerpo político el Estado Libre Asociado de Puerto Rico... En otras jurisdicciones, el uso de la tablilla se ha utilizado para conmemorar eventos significativos. Por ejemplo, en los Estados Unidos de América se han confeccionado tablillas para conmemorar el Día de su Independencia, el Día de la Abolición de la Esclavitud u otros. La confección de la tablilla conmemorativa del cincuentenario de la Constitución del Estado Libre Asociado de Puerto Rico, más que un simple recordatorio, es un homenaje a los hombres y mujeres que formaron parte de la histórica primera Asamblea Constituyente de Puerto Rico.

6. El Secretario del D.T.O.P., José M. Izquierdo Encamación, escogió el diseño actual y autorizó la orden de compra por la cantidad de [120,000] tablillas a un costo de $212,500.00 a favor de State of Louisiana Prison Enterprises, suplidor de las tablillas.

7. Las tablillas se encuentran disponibles desde el 2 de enero de 2002. Aunque en principio creó confusión, la adquisición de la tablilla para un vehículo nuevo es voluntaria; de solicitarse un cambio en la tablilla oficial actualmente utilizada, se pagará un costo de $10.00.

8. El diseño de la tablilla contiene, de fondo, en el extremo derecho, la bandera de Puerto Rico y en el extremo izquierdo la bandera de los Estados Unidos, en la parte superior lee Puerto Rico, y bajo el nombre de la isla la palabra Cincuentenario, en el centro tiene el escudo de Puerto Rico y en la parte inferior lee Estado Libre Asociado de Puerto Rico, bajo éste los años conmemorativos, 1952-2002. Sobre este diseño está sobre puesto el número de tablilla correspondiente. ”

En cuanto a la capacidad en la que comparecieron los apelantes, el Tribunal a quo dispuso lo siguiente:
“Los demandantes alegaron en cuanto a su capacidad de comparecencia lo siguiente: que el codemandante Luis Manuel Maldonado fue candidato oficial por el Partido Nuevo Progresista al Senado de Puerto Rico en las elecciones generales del 7 de noviembre de 2002 y quien se ha presentado en los medios de comunicación como candidato a Senador por Acumulación por el mismo partido para las futuras elecciones del 2004. Sostiene, a los fines de establecer su causa de acción y la acreencia a un remedio, que durante el mes de enero de 2002 se trasladó a un centro de servicios al conductor, ubicado en el Municipio de Utuado, para preguntar qué tipo de tablilla se estaba expidiendo en el caso de que interesara adquirir un vehículo de motor; como así alega que tenía pensado, indica que se le informó que en ese momento sólo estaba disponible la tablilla conmemorativa del *658 cincuentenario del Estado Libre Asociado de Puerto Rico; que nadie le explicó que podía rehusar el uso de la misma o seleccionar otra por la cual él tendría que pagar una suma adicional de $100.00. ”

El codemandante Virgilio Humberto Meléndez Dávilafue candidato a representante por el precinto 4 de San Juan en las primarias especiales celebradas el pasado 24 de febrero de 2002 y alega que volverá a serlo en el 2004. Igualmente sostiene, a los fines de establecer su causa de acción, que durante los meses de enero y febrero de 2002 y en ocasión de su campaña electoral, visitó varios lugares donde se venden vehículos de motor, específicamente señala la Ave. Kennedy en San Juan; allí fue informado que la Directoría de Servicio al Cliente estaba distribuyendo la tablilla conmemorativa, sin recibir orientación sobre la posibilidad de obtener una tablilla personalizada.

El Tribunal de Primera Instancia resolvió que los apelantes tenían acción legitimada para instar la presente causa de acción. No obstante, declaró sin lugar la petición presentada por éstos al concluir que: (a) el uso de la tablilla conmemorativa es voluntario; (b) nuestro régimen constitucional vigente es el Estado Libre Asociado de Puerto Rico; (c) no hay contenido ideológico en la tablilla; (d) la tablilla contiene las banderas como símbolos oficiales de Puerto Rico y los Estados Unidos y que el lema Cincuentenario allí utilizado describe y evoca el estado colectivo jurídico del Pueblo de Puerto Rico consagrado en la Constitución de Puerto Rico; (e) la reglamentación administrativa prohíbe el uso de las banderas para propósitos comerciales, que no están presentes en el caso de autos; (f) la impresión, distribución y ofrecimiento de las tablillas conmemorativas del Cincuentenario no viola disposición constitucional alguna. De conformidad con lo anterior, el Tribunal de Primera Instancia declaró sin lugar la demanda de autos, por lo que ordenó su archivo y desestimación.
Inconforme con tal dictamen, los apelantes comparecen ante nos mediante el presente recurso de apelación en el que sostienen que erró el Foro apelado:

“1. ...en la interpretación del Reglamento para la Utilización de la Bandera de Puerto Rico.

2. ...al determinar que la erogación de fondos públicos para la celebración del Cincuentenario del Estado Libre Asociado de Puerto Rico no es una actividad político-partidista que beneficia al Partido Popular Democrático.

3. ...al determinar que la utilización de la tabilla conmemorativa no viola la propia reglamentación del Departamento de Transportación y Obras Públicas (D.T.O.P.), por lo que la utilización de fondos públicos para dicho concepto es una acción ultra vires cometida por el Departamento de Transportación y Obras Públicas, Hon. José E. Izquierdo.
4. ...al determinar que la utilización y distinción entre las tablillas conmemorativas del cincuentenario del E. L.A., versus aquéllos que no utilicen la misma, no se presta para un carpeteo político y para la distinción peligrosa entre aquéllos que creen en la celebración del E.L.A. y aquéllos que no creen en la misma. ”
Posteriormente, el Secretario de Transportación y Obras Públicas, representado por el Procurador General, presentó su alegato, en el cual sostuvo que los apelantes carecen de legitimación activa para instar la presente acción, toda vez que su condición de votantes en general, sin más nexos a la utilización de fondos públicos, no les permite cuestionar, el uso de los mismos. Alegó, además, que los apelantes no han sufrido daño alguno, puesto que la obtención de la tablilla conmemorativa es un acto voluntario y el Departamento de Transportación y Obras Públicas no les requiere a los ciudadanos de Puerto Rico que adquieran la misma para poder transitar por nuestras vías públicas.
Nos encontramos en posición de resolver.
*659 n
La jurisdicción, fuente principal de la autoridad de los tribunales para interpretar y hacer cumplir las leyes en nuestro sistema de gobierno, se halla gobernada por la aplicación de las diversas doctrinas que dan vida al principio de justiciabilidad: legitimación activa, academicidad y cuestión política. P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995). Debido a ello, previo a entrar en los méritos de un caso, debemos determinar si la controversia es justiciable. Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R._(2002), 2002 JTS 105.
Un asunto no es justiciable, cuando: se trata de resolver una cuestión política; una de las partes no tiene capacidad jurídica para promover el pleito; después de comenzado el pleito, hechos posteriores lo convierten en académico; las partes buscan obtener una opinión consultiva; o se promueve un pleito que no está maduro. Noriega v. Hernández Colón, 135 D.P.R. 406, 422-21 (1994).
La capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante o demandado, en representación de cualquiera de ellos, se conoce propiamente como “legitimación en causa”. Col. Opticos de P.R. v. Vani Visual Center, 124 D.P.R. 559, 563 (1989). Reiteradamente nuestro más Alto Foro ha expresado que el reclamante de un derecho posee legitimación activa si cumple con los siguientes requisitos: 1) que ha sufrido un daño claro y palpable; 2) que el referido daño es uno real, inmediato y preciso y no uno abstracto o hipotético; 3) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge bajo el palio de la Constitución o de una ley. Véase, Col. Peritos Elec. v. A.E.E., 150 D.P.R._, 2000 JTS 43; Cossy U.P.R. v. C.E.E., 137 D.P.R. 877 (1995); Noriega v. Hernández Colón, 135 D.P.R. 406 (1994); Hernández Torres v. Hernández Colón, 131 D.P.R. 593 (1992); Asoc. Maestros de P.R. v. Srio. Educación, 137 D.P.R. 528 (1994).
Al determinar si un reclamante posee legitimación activa, el juzgador deberá tomar como ciertas sus alegaciones y las interpretará de la manera más favorable a éste. Col. Peritos Elec. v. A.E.E., supra; Col. Ópticos de P.R. v. Vani Visual Center, supra, pág. 567. Los criterios para evaluar el interés de la parte litigante son más rigurosos si se interesa vindicar los derechos constitucionales de terceros. E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983). Sin embargo, ha expresado nuestro más Alto foro que "el principio rector es que el tribunal ejercitará su discreción en uno u otro sentido, dependiendo de la trascendencia del derecho afectado y la importancia de los intereses en conflicto". Zachry International v. Tribunal Superior, 104 D.P.R. 267 (1975). La determinación de si se tiene o no legitimación activa es una que se centra principalmente en la persona que promueve la acción y secundariamente en las cuestiones a adjudicarse. Hernández Torres v. Hernández Colón, supra.
El Tribunal Supremo ha interpretado los requisitos sobre legitimación activa de forma flexible y liberal, particularmente al atender reclamos dirigidos contra las agencias y funcionarios gubernamentales, específicamente en las áreas de derecho ambiental, protección al consumidor y defensa de intereses gremiales. García Oyola v. Junta de Calidad Ambiental, 142 D.P.R. 532 (1997); Col. Opticos de P.R. v. Vani Visual, supra; Pacheco Fraticcelli v. Cintrón Antonsanti, 122 D.P.R. 229, 237 (1988); Solis v. Municipio, 120 D.P.R. 53, 56 (1987); Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 719 (1974). Este enfoque "responde a un reconocimiento de que para cumplir con nuestra responsabilidad constitucional en esta época, debemos interpretar liberalmente los requisitos de legitimación activa de aquéllos que acuden al foro judicial en auxilio de nuestra jurisdicción. [. . .] De lo contrario, cerramos las puertas de los tribunales a personas y entidades que han sido adversamente afectadas por actuaciones del Estado o de entidades particulares y que presentan reclamaciones que pueden ser debidamente atendidas por el foro judicial." Col. Opticos de P.R. v. Vani Visual, supra, pág. 564 (citas omitidas).
La adecuada adjudicación de la controversia en tomo a la legitimación activa de los apelantes requiere que hagamos un análisis de la jurisprudencia más significativa sobre el tema.
Nuestro Tribunal Supremo ha resuelto varios casos en los que ha interpretado el requisito de legitimación *660 activa. Si bien nuestro más Alto Foro ha seguido una trayectoria más bien liberalizadora de dicha doctrina, debemos destacar que ha sido mayormente en las áreas de derechos ambientales, protección al consumidor y defensa de derechos gremiales. Entendemos que dicha tendencia se ha manifestado también en los casos relacionados con controversias electorales, ya sea en reclamos dirigidos a salvaguardar la secretividad del voto como a cuestionar el uso de fondos públicos para fines político-partidistas. Al examinar dicha trayectoria, no podemos perder de vista que en Puerto Rico expresamente está prohibida la acción del contribuyente, Ley Núm. 2 de 25 de febrero de 1946, 32 L.P.R.A. see. 3074, y la utilización del remedio del injunction para impedir la aplicación de cualquier ley de la Asamblea Legislativa, o el cumplimiento de cualquier actuación autorizada legislativamente, a menos que medie sentencia final y firme declarándola inconstitucional, Ley Núm. 1 de 25 de febrero de 1946, 32 L.P.R.A. see. 3524.
Iniciemos el recorrido histórico con Asociación de Maestros v. Pérez, Gobernador Int., 67 D.P.R. 849 (1947), el cual surgió como resultado de un proyecto de Ley que establecía la enseñanza del español en nuestras escuelas públicas. El Gobernador vetó el proyecto en dos ocasiones y de conformidad con lo dispuesto en la Ley Orgánica Jones lo refirió al Presidente de los Estados Unidos de América. Transcurridos más de 90 días, sin que el Presidente pasara juicio sobre el proyecto, la Asociación de Maestros solicitó orden de mandamus dirigida al Gobernador para que pusiera en vigor la Ley, según se disponía en el Artículo 22 de la Ley Orgánica. La controversia giró en tomo a si la Asociación de Maestros tenía legitimación activa para incoar el mandamus para que se cumpliese con las dispo-siciones de ley. El Tribunal Supremo dispuso que:
“Tratándose de cuestiones de interés público, sostiene la mayoría de las autoridades que interpretan preceptos similares al nuestro, que cuando la cuestión envuelta es de interés público y el mandamus tiene por objeto conseguir la consecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como tal está interesado en la ejecución y protección del derecho público.” A la pág. 581.
Posteriormente, el Tribunal Supremo resolvió el caso de Cerame Vivas v. Depto. De Salud, 99 D.P.R. 45 (1970). Allí, Cerame Vivas demandó en su calidad personal, y presentó un recurso de injunction en el que le solicitó al Secretario de Salud que cumpliera con las obligaciones impuestas en la Ley Núm. 142 de 1 de mayo de 1950 y el Reglamento Núm. 131 (Ley de Control de la Contaminación, 24 L.P.R.A. sees. 591-601), y con la política pública de protección de los recursos naturales encamada en el Artículo VI de la Constitución de Puerto Rico. Cerame Vivas alegó que un grupo de empresas industriales y personas estaban arrojando efluentes y desperdicios sin tratamiento en las aguas costaneras de La Parguera, lo que las hacía nocivas a la salud humana y a la flora y la fauna que allí habitaba. El Tribunal Supremo determinó que Cerame tenía legitimación para entablar el pleito de injunction contra el Secretario de Salud y subrayó que la capacidad de litigar de éste emanaba del Art. 10 de la citada ley, el cual señala que las causas de acción que resulten de las violaciones de la ley son para beneficio del E.L.A.
En el 1974, se resolvió el caso de Salas Soler v. Srio. de Agricultura, supra. El Secretario de Agricultura aprobó un reglamento para regir la venta, distribución, y aplicación comercial de venenos comerciales sin someter ante la Junta de Calidad Ambiental una declaración de impacto ambiental sobre la acción propuesta. El Instituto de Estudio Ambiental, Inc. y uno de sus miembros comparecieron como demandantes y presentaron una petición de mandamus contra el Secretario de Agricultura para que se le ordenara someter una declaración de impacto ambiental, según requerido por el Art. 4 de la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, y para que se dejase sin efecto el reglamento en cuestión. El Tribunal Superior entendió que los demandantes no tenían legitimación activa.
El Tribunal Supremo revocó dicha determinación y señaló, en cuanto a la capacidad de los demandantes, que el Instituto de Estudio Ambiental intentaba servir los propósitos de proteger el medio ambiente, uno de los *661 miembros de dicho Instituto había escrito extensamente sobre el uso de plaguicidas y otro era su presidente y, a su vez, dueño de una finca en la que había utilizado diversos plaguicidas. Además, enfatizó el hecho de que el Art. 19 de la Ley Sobre Política Pública Ambiental, 12 L.P.R.A. 1239, contenía una disposición específica que le' concedía capacidad a los ciudadanos para demandar. Dicho artículo leía, en lo pertinente, que "igualmente cualquier ciudadano afectado por la falta de implementación de esta ley, podrá acudir al Tribunal Superior solamente para solicitar un mandamus, disponiéndose que lo anterior no incluye acciones de daños y perjuicios".
Nuestro más Alto Foro señaló que:
“Entendemos que los recurrentes constituyen, sin duda, personas afectadas por la falta de implementación de la ley dentro del significado del Art. 19 de nuestra Ley sobre Política Pública Ambiental. Para demostrar que se es una persona afectada por una acción gubernamental bajo nuestro tipo de estatuto, no hay necesidad de demostrar daño económico. [Citas omitidas.] El daño puede basarse en consideraciones ambientales, recreativas, espirituales o aun simplemente estéticas. [Citas omitidas.] Nuestra decisión, en este sentido, no quiere decir que la puerta está abierta de par en par la consideración de cualquier caso que desee incoar cualquier ciudadano en alegada protección de una política pública. Debe examinarse el nexo entre el interés del ciudadano y la acción radicada; el hecho de que los demandantes puedan representar adecuadamente el interés público y asumir su debida defensa; si el caso es justiciable o puede montar a una intervención indebida del poder judicial con el funcionamiento de otra parte del gobierno; si la controversia está madura para decisión, y si el litigio en cuestión constituye un medio adecuado para plantear en su debida dimensión y particularidad el problema de que se trate. ”
En Fuster v. Busó, 102 D.P.R. 327 (1974), los demandantes eran tres ciudadanos y dos personas imaginarias que tenían el propósito de sentar en la Cámara de Representantes al señor Roberto Sánchez Vilella. El Tribunal Supremo señaló que la capacidad jurídica de los demandantes para instar el pleito en cuestión era controvertible. No obstante, sin ulterior análisis, les reconoció legitimación debido al interés público envuelto.
En P.S.P. v. E.L.A., 107 D.P.R. 590, (1978), el Partido Socialista Puertorriqueño presentó una demanda de sentencia declaratoria e interdicto contra el E.L.A., la C.E.E. y otros, en la que alegó que en contravención al Art. VI, Sec. 9, de la Constitución de Puerto Rico, se estaban utilizando fondos públicos para fines privados al llevar a cabo las elecciones intemas de la organización local del Partido Demócrata norteamericano. El Tribunal Supremo sostuvo que el derecho del Partido Socialista a impugnar legislación que a su entender lesiona sus intereses como partido político, y aun como grupo general de ciudadanos, era manifiesto.
No obstante, en Fundación Arqueológica v. Dpto. de la Vivienda, 109 D.P.R. 387 (1980), nuestro Tribunal Supremo adoptó una posición mas restrictiva de la doctrina de legitimación activa. En este caso, la Fundación Arqueológica y siete ciudadanos presentaron un pleito de clase contra el E.L.A. en el que alegaron representar a todos los puertorriqueños por concepto de los daños y perjuicios estéticos sufridos por la demolición de un edifico ubicado en la zona histórica del Viejo San Juan, y que alegaron era parte del patrimonio cultural de todo Puerto Rico.
El Tribunal Supremo no le reconoció capacidad jurídica (standing) a los demandantes para instar el pleito, toda vez que su causa de acción no era justiciable, pues se trataba de una acción privada para el resarcimiento de unos daños abstractos y no constituía la acción pública encaminada a la ejecución de un deber ministerial como en Asoc. de Maestros v. Pérez, Gobernador, Int., supra, y Cerame Vivas v. Srio. de Salud, supra, y Salas Soler v. Srio. de Agricultura, supra. Expresó, además, que aun en los casos derivados de precepto constitucional o estatuto, el demandante debe alegar que ha sufrido un daño claro y palpable, sin importar que el tipo de daño sea compartido por una extensa clase de otros posibles litigantes. Warth v. Seldin, 422 U.S. 490, 498 y 501 (1975), según citado en Fund. Arqueológica v. Dpto. de la Vivienda,, supra, a la pág. 391.
*662 Por último, nuestro más Alto Foro señaló que:
"[L]a capacidad para demandar no puede depender del interés aquí alegado que tienen en común todos los que integran el público, por la naturaleza necesariamente abstracta del agravio que todos los ciudadanos comparten. Daño concreto, ya sea real o inminente, es indispensable elemento de la controversia que la proyecta de modo tradicionalmente justiciable... Permitir a un demandante que no alega un daño explícito, que requiera del Tribunal resolver sobre una importante cuestión constitucional crearía un potencial de abuso del proceso judicial, distorsionaría la función de la Rama Judicial en su relación con la Ejecutiva y la legislativa, y expondría a los tribunales a la imputación fundada de propiciar un 'gobierno por injunction’'. ” (Citas omitidas y énfasis nuestro.)
El caso de Marrero v. Mun. de Morovis, 115 D.P.R. 643 (1984), reviste gran importancia para resolver el asunto planteado en el presente recurso, pues el Tribunal a quo apoyó su determinación de concederle legitimación activa a los aquí apelantes en lo allí resuelto. En el referido caso, varios ciudadanos impugnaron la actuación del Alcalde de Morovis al colocar en el automóvil, propiedad del Estado, oficialmente asignádole, tres insignias políticas correspondientes al Partido Popular Democrático. Los demandantes alegaron esencialmente que dicha actuación constituia un uso ilegal e impermisible de fondos públicos, en violación al Art. VI, Sec. 9 de la Constitución del E.L.A. Para justificar su actuación, el Alcalde demandado invocó el Art. 3.011 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3018c, que autorizaba al Gobernador, los jefes de agencia y los alcaldes a usar los vehículos de motor asignados para hacer campaña política. El Tribunal Supremo entró de lleno a considerar los méritos del recurso, sin ni siquiera plantearse lo relativo a la legitimación activa de los demandantes y confirmó el decreto de inconstitucionalidad del Art. 3.011 de la Ley Electoral, supra. Así resolvió que:

“La disposición de ley que autoriza el uso de vehículos oficiales a ciertos funcionarios para campaña partidista, crea una clasificación legislativa que favorece únicamente a los funcionarios incumbentes. Toca íntimamente el ámbito político operacional y afecta los derechos de todos los electores y candidatos, sean o no miembros del partido que los eligió. ”

El Tribunal Supremo concluyó que de prevalecer el Art. 3.011 de la Ley Electoral, supra, se estaría perpetuando una disparidad económica que derrotaría el propósito constitucional de igualdad económica entre los partidos, pues se le estaría concediendo unos subsidios gubernamentales superiores a unos candidatos, dándoles ventaja sobre otros.
En P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995), se consolidaron tres casos, en los que se planteó la interrogante de si existía una violación al axioma constitucional de igualdad económica de los partidos y a la See. 9 del Art. VI, de la Constitución de Puerto Rico, sobre el uso de fondos públicos cuando el Estado o un municipio utiliza dichos fondos fuera del período de veda electoral para pagar anuncios que tienen el propósito de beneficiar al partido en el poder o a los candidatos del partido en el poder, tanto a nivel estatal como a nivel municipal. 
El Tribunal Supremo expuso lo siguiente:
“Para el análisis de la legitimación activa en estos casos, resulta importante comprender la estrecha relación entre la See. 9 del Art. VI de la Constitución del E.L.A., supra, y el axioma de igualdad electoral en su vertiente de igualdad económica. En la medida en que se subvencione una campaña político-partidista con fondos públicos, se le permite una ventaja a un partido (o candidato político) sobre otros, lo que atenta contra el axioma de igualdad electoral y socava los pilares del esquema electoral en nuestro País, el cual garantiza la igualdad económica entre los partidos sin limitarlo al período eleccionario. Esto afecta detrimentalmente, además, el derecho de los electores a ejercer su voto libre de cualquier coacción, toda vez que como componentes esenciales de los partidos son colocados en la misma desventaja económica que su partido frente al *663 que subvencionó parte de su campaña política con los fondos de todo el Pueblo de Puerto Rico, incluso los de esos electores pertenecientes a cualquier partido de oposición del Gobierno actual.” Id., a la pág. 671. (Enfasis nuestro.)
El Tribunal Supremo le reconoció capacidad a los partidos políticos para instar una acción cuando se trata de proteger el axioma constitucional de igualdad electoral en su vertiente de igualdad económica, Art. VI, Sec. 9 de la Constitución. También se reconoció legitimación activa a los electores por virtud de lo dispuesto en el Art. 2.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3051, que le concede la capacidad a todo elector para promover toda acción legal para salvaguardar su derecho al voto universal, igual, directo y secreto consagrado en el Art. II, Sec. 2 de la Constitución de Puerto Rico. 
En P.P.D. v. Gobernador I, supra, en lo que concierne al caso civil núm. Ap-95-9, varios electores residentes del Municipio de Carolina, junto con el candidato a Alcalde y legisladores del partido opositor, demandaron al Municipio de Carolina y a su Alcalde por la utilización de un logo en anuncios, rótulos, vehículos, etc... que tenía el propósito de realzar la figura del Alcalde, quien era, a su vez, el candidato a la reelección por el partido al cual ellos no pertenecían. Los electores reclamaron como daño el uso de los fondos del Municipio de Carolina para una campaña que beneficiaba al candidato a Alcalde con el cual ellos no simpatizaban, lo que constituía un uso de fondos públicos para fines político-partidistas en contravención al Art. VI, Sec. 9 de la Constitución del E.L.A. Id., a la pág. 657.
El Tribunal Supremo le reconoció capacidad a los electores del partido minoritario, junto con el candidato a alcalde del partido opositor, para hacer valer sus derechos a un voto igual al de los electores identificados con el Alcalde incumbente y dispuso que:

“El daño reclamado en los tres (3) casos ante nuestra consideración se traduce concretamente en el subsidio adicional que representa la subvención de anuncios político-partidistas con fondos públicos para beneficio exclusivo del partido que ostenta las riendas de Gobierno sea éste central o municipal, o del candidato incumbente. Ese subsidio de anuncios político-partidistas constituye no sólo un uso indebido de fondos públicos, sino que coloca a los demandantes en los tres (3) casos ante nos en una situación de desigualdad económica con respecto al partido o al candidato que de esa forma se beneficia utilizando fondos públicos.

De otra parte, el remedio interdictal solicitado guarda una estrecha relación con el interés y objetivo de los demandantes de proteger su derecho de igualdad económica: detener la ventaja y situación de desigualdad económica creada, además de restablecer el equilibrio de la igualdad económica de los partidos. P.P.D. v. Gobernador I, supra, a las págs. 673 y 674. ” (Enfasis nuestro.)
III
Apliquemos el derecho antes expuesto, a la situación particular del caso ante nos.
En el caso de autos, los apelantes alegan que la expedición de la tablilla en conmemoración del quincuagésimo aniversario del Estado Libre Asociado de Puerto Rico, constituye una violación de varias disposiciones constitucionales y señalan en su demanda que la utilización de las banderas y del logo del Cincuentenario tiene los siguientes efectos:

“a. Establece una preferencia hacia una fórmula política que no es favorecida por la mayoría del electorado puertorriqueño.

b. Permite la erogación de fondos públicos para favorecer determinada fórmula plebiscitaria en contra de las demás fórmulas políticas y en violación a la ley electoral.

*664
c. Obliga al ciudadano a expresar su preferencia electoral cuando solicite los servicios del D.T.O.P.; porque se hará una distinción entre aquéllos que coloquen la tablilla del cincuentenario y aquéllos que no deseen colocar la misma.

d. La posibilidad de que el ciudadano seleccione una determinada tablilla será un criterio que podrá determinar la preferencia política del ciudadano y permitirá a todo aquél que vea el vehículo con la tablilla cuál es su predilección electoral; por lo que tendría el efecto de recibir servicios de forma preferente en aquellos municipios, agencias o instrumentalidades públicas del Gobierno de Puerto Rico, que crean en esta fórmula; por lo que en efecto se estaría creando una nueva identificación político-partidista entre aquéllos que creen en la celebración del cincuentenario del E.L.A. y aquéllos que no creen en dicha fórmula como los demandantes.

e. Que la Constitución del Estado Libre Asociado de Puerto Rico garantiza el sufragio secreto de todos los ciudadanos; por lo que se estaría violentando ese derecho, en violación al Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. ”

El Tribunal de Primera Instancia no le reconoció a los apelantes legitimidad para reclamar los derechos que amparan a toda la ciudadanía en lo que respecta a que el uso de la tablilla obliga al ciudadano a expresar su preferencia electoral y establece una preferencia a una fórmula política. El Tribunal a quo sostuvo que los apelantes no podían reclamar legitimación activa al amparo de agravios generalizados y abstractos comunes a todos los miembros de una comunidad. Dicho Foro procedió, entonces, a analizar la capacidad de los apelantes como candidatos a puestos electivos en los próximos comicios electorales, según las alegaciones de éstos. Concluyó el Tribunal apelado que ninguno de los apelantes ostenta un cargo público en la actualidad ni es candidato a cargo público en las próximas elecciones y que la posibilidad de que lo sean es una especulativa, por lo que tampoco pudieron acreditar -ni siquiera lo alegaron- que han sufrido un daño como candidatos miembros de un partido político porque se les ha colocado en una posición de desventaja económica.
Entendemos que actuó correctamente el Tribunal de Primera Instancia al resolver que los apelantes no tienen legitimación para instar reclamos relacionados con la libertad de expresión y la secretividad del voto, pues no demostraron la existencia de un daño concreto, claro y palpable a un área de interés protegido por ese derecho. A los apelantes no se les obligó a comprar ni a utilizar la tablilla objeto de la presente controversia. La compra y utilización de la tablilla es completamente voluntaria. Los apelantes ni siquiera han adquirido un vehículo nuevo, de manera que nunca se han confrontado con el dilema real de adquirir la tablilla conmemorativa u otra. Concurrimos, además, con la determinación del Tribunal a quo a los efectos de que los apelantes tampoco tienen legitimación activa para instar el pleito de autos en calidad de candidatos del partido político opositor, pues no alegaron que la expedición de la tablilla los colocara en desventaja económica frente a los candidatos del partido de Gobierno.
Luego de resolver lo anterior, el Foro apelado examinó la capacidad de los apelantes, en su calidad de ciudadanos particulares, afiliados a un partido político distinto al que gobierna, para cuestionar un gasto público. El Tribunal a quo analizó y le reconoció legitimación a los apelantes, a la luz de lo resuelto por nuestro más Alto Foro en Marrero v. Mun. de Morovis, supra. 
De entrada, debemos aclarar que Marrero v. Mun. de Morovis, supra, no puede utilizarse como un precedente para determinar si los aquí apelantes tienen legitimación activa, puesto que allí ni siquiera se discutió dicha doctrina. De todas maneras, aun cuando entendiéramos lo contrario, los hechos de dicho caso difieren en gran medida de los aquí presentados. En el caso de Marrero, supra, se cuestionó la utilización de una propaganda claramente partidista. La utilización de dicha propaganda fue la causante del daño sufrido por los allí demandantes, pues los colocaba en una desventaja económica, habida cuenta que ellos no profesaban la ideología política realzada a través de los medios publicitarios. No es esa la situación del caso de autos.
*665 Por otro lado, la situación surgida en. P.P.D. v. Gobernador I, supra, la cual motivó que el Tribunal Supremo hiciera unas expresiones a los efectos de concederle legitimación activa a dos electores del Municipio de Carolina para impugnar el uso de fondos públicos para fines político-partidistas, es completamente diferente a la presentada en el pleito de autos. No cabe duda que en el referido caso la actuación que fue objeto de la impugnación fue considerada por nuestro Tribunal Supremo como una subvención de anuncios político-partidistas con fondos públicos.
La jurisprudencia anteriormente citada revela indiscutiblemente que para poder determinar si un demandante posee legitimación activa para instar un pleito, tiene que demostrar que ha sufrido un daño claro, palpable, real, inmediato y preciso, que no sea abstracto ni hipotético. En los casos, en los que como el presente, se presenta una reclamación apoyada en la violación del Art. VI, Sec. 9 de la Constitución de Puerto Rico, en la que se alega que se están utilizando unos fondos públicos para la promoción de una fórmula, candidato o partido político con la cual no simpatizan los demandantes, se requiere, de igual forma, que se demuestre la existencia del daño.
Nuestro Más Alto Foro ha identificado ese daño como real, inmediato, claro y palpable, pues constituye un "subsidio adicional que representa la subvención de anuncios político-partidistas con fondos públicos para beneficio exclusivo del partido que ostenta las riendas de Gobierno sea éste central o municipal, o del candidato incumbente" y que ”[e]n la medida en que se subvencione una campaña político partidista con fondos públicos, se le permite una ventaja a un partido (o candidato político) sobre otros, lo que afecta detrimentalmente a los partidos políticos opositores y a sus electores, pues se viola el axioma de igualdad electoral en nuestro País, el cual garantiza la igualdad económica entre los partidos." P.P.D. v. Gobernador I, supra.
De lo anterior se desprende que la determinación de lo que constituye daño claro, palpable y real, en los casos como el de autos, está inextricablemente unida desde su origen al examen de la capacidad de la parte demandante y, simultáneamente, a la determinación de que la actuación gubernamental que se cuestiona sea una que represente la subvención de anuncios político-partidistas. En otras palabras, no puede existir un daño real sin que se demuestre que el uso de fondos públicos es para subvencionar gastos de índole político-partidista, pues lo anterior es lo que promueve la desigualdad económica, prohibida por el Art. VI, Sec. 9 de la Constitución de Puerto Rico. Así, en el caso de P.P.D. v. Gobernador I, supra, se le concedió legitimación activa a los electores, luego de concluir que se estaban utilizando fondos públicos para fines político-partidistas, y que tal actuación colocaba en desventaja a los electores del partido opositor con respecto al partido o candidato que se beneficia utilizando los fondos.
Ahora bien, cabe entonces preguntarse ¿cuál es el daño real y preciso sufrido por los apelantes en el caso de autos? La contestación a dicha interrogante requiere que examinemos si la actuación gubernamental aquí impugnada promueve una campaña político partidista o favorece una fórmula de status político. Entendemos que no.
Los apelantes conciben el término Estado Libre Asociado de Puerto Rico primordialmente como una fórmula de status político íntimamente relacionada y promovida por el partido que detenta el poder en Puerto Rico. Si bien es cierto que la evocación sugeridora es inevitable y, ciertamente, surtidora de profundas diferencias ideológicas entre los puertorriqueños(as), con la aprobación de la Constitución del Estado Libre Asociado de Puerto Rico en el 1952 se constituyó el cuerpo político conocido como el Estado Libre Asociado de Puerto Rico, Art. I, Sec. 1 de la Constitución del Estado Libre Asociado. Diversas disposiciones de la Constitución de Puerto Rico hacen referencia clara a que el nombre del cuerpo político que nos rige es el Estado Libre Asociado de Puerto Rico. Véanse, Art. II, Sec. 2; Art. VI, Sec. 15; Art. IX, Sec. 4; Art. IX, Sec. 5; Resolución Núm. 22 de la Convención Constituyente. Aludimos a las expresiones vertidas por el Juez Asociado del Tribunal Supremo de Puerto Rico, Hon. Jaime B. Fuster Berlingeri, en el voto disidente emitido en Fas *666 Alzamora v. Gobernador, 150 D.P.R._(2000), 2000 JTS 74.
“Durante las discusiones que se llevaron a cabo en la Asamblea Constituyente de Puerto Rico sobre este particular se hizo claro que el pueblo de Puerto Rico, al adoptar dicha Constitución, se organizaba como un Estado Libre Asociado y que el nombre propio de ese ente jurídico que se estaba instaurando sería precisamente el de "Estado Libre Asociado de Puerto Rico”. Diario de Sesiones de la Asamblea Constituyente, 1961, a las páginas 1119, 1124, 1126, 1200, 1203-1206, 1217-1218, 1222, 1893, 1895, 2359, 2364, 2381-2387 y 2391. Por esa razón, en la Resolución Núm. 22 de. 4 de febrero de 1952, la Asamblea Constituyente claramente expresó "que el nombre en español del cuerpo político creado en virtud de la Constitución que por esta Convención se adopta... habrá de ser 'Estado Libre Asociado de Puerto Rico'". Diario de Sesiones de la Asamblea Constituyente, a la página 2354. ” (Subrayado nuestro.)
La tabilla objeto de la presente controversia contiene las banderas como símbolos oficiales de Puerto Rico y Estados Unidos y el lema Cincuentenario del Estado Libre Asociado de Puerto Rico 1952-2002. Ese lema describe, conmemora y evoca las efemérides de la creación del estado colectivo jurídico de nuestro pueblo, que se consagra en la Constitución de Puerto Rico, la cual fue aprobada en el 1952. No nos cabe la menor duda que la utilización de fondos públicos para producir y distribuir una tablilla con el nombre del Estado Libre Asociado de Puerto Rico, en el contexto que nos ocupa, no constituye un fin político- partidista, pues ese es el nombre oficial del gobierno de este país, y esto no puede constituir, de por sí, el daño claro, real, inmediato y preciso al cual se ha hecho referencia en la jurisprudencia para acreditar la legitimación activa de los que impugnan una actuación gubernamental.
No es la presente la acción pública encaminada a la ejecución de un deber ministerial sancionada por nuestro Tribunal Supremo en los casos de Asoc. de Maestros v. Pérez, Gobernador, Int., supra; Cerame Vivas v. Srio. de Salud, supra; y Salas Soler v. Srio. De Agricultura, supra. Tampoco es ésta la acción pública encaminada a la protección del axioma constitucional de igualdad económica entre los partidos consagrado en el Art. VI, Sec. 9 de la Constitución de Puerto Rico. Nos enfrentamos a una situación en la que los apelantes reclaman unos daños abstractos e hipotéticos que le cierran el paso a la intervención judicial.
Acogemos las expresiones vertidas por nuestro más Alto foro en Fund. Arqueológica v. Dpto. de la Vivienda, supra, para demostrar las implicaciones negativas que conllevaría otorgarles legitimación activa a los apelantes en el caso de autos:

“Permitir a un demandante que no alega un daño explícito, que requiera del Tribunal resolver sobre una importante cuestión constitucional, crearía un potencial de abuso del proceso judicial, distorsionaría la función de la Rama Judicial en su relación con la Ejecutiva y la legislativa, y expondría a los tribunales a la imputación fundada de propiciar un 'gobierno por injunction'. ” 

Concluimos, pues, que los apelantes carecen de legitimación activa para instar la presente reclamación. Erró el Tribunal de Primera Instancia al reconocerles legitimación activa a los apelantes.
El Juez Negroni Cintrón concurre con el resultado de confirmar la sentencia desestimatoria.
IV
Por los fundamentos antes expuestos, se modifica el fundamento de la sentencia apelada y se ordena la desestimación de la reclamación de epígrafe, ya que los apelantes carecen de legitimación activa para instarla. Así modificada, se confirma.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
*667 Aida Ileana Oquendo Gralau Secretaria General
ESCOLIOS 2003 DTA 10
1. El Tribunal de Primera Instancia le anotó la rebeldía al E.L.A. y al Director Ejecutivo del Departamento de Trans-portación y Obras Públicas y desestimó la acción contra la Gobernadora.
2. El Art. VI, Sec. 9 de la Constitución del E.L.A. provee:

“Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. ”

3. Véase, además, P.P.D. v. Gobernador II, 136 D.P.R. 916 (1994).
4. Véase, además, Sánchez y Colón v. E.L.A. I, 134 D.P.R. 445 (1993), en el que se le reconoció legitimación activa a los demandantes como electores para impugnar la Ley que autorizó la celebración del plebiscito con las fórmulas tradicionales de status.
5. El Tribunal a quo decidió analizar la capacidad de los apelantes después de concluir lo siguiente:
“La prédica de daños por los demandantes se sostiene esencialmente bajo el argumento de naturaleza constitucional de que la utilización de la tablilla conlleva la violación al Artículo II, Sección 2 de la Constitución del E.L.A. o de la Primera Enmienda de la Constitución de los Estados Unidos por interferir con la libertad de expresión; igualmente, en la utilización de fondos públicos para adelantar una fórmula política y la celebración de una actividad que será observada solamente por aquéllos que creen en la misma.

Sin dudas, de lo anterior surge que los demandantes se presentan en autos en calidad de ciudadanos particulares, afiliados a un partido político, lo que les confiere el alegado derecho de cuestionar un gasto público. Es desde dicho ángulo que los demandantes cifran su interés y desde el cual debemos analizar su capacidad para instar la acción de marras. ”

6.A estos efectos, el Tribunal a quo dispuso que:

“La tangencia de las controversias se da, más allá de la similitud en el reclamo, en cuanto a la calidad y capacidad en la que comparecen los demandantes. En Marrero, supra, el tribunal interviene en la controversia sin considerar ni cuestionar la acción legitimada de los ciudadanos demandantes para instar la reclamación. Reconocemos, conforme al precedente, la acción legitimada de los demandantes.

Las anteriores expresiones del Tribunal a quo, a nuestro entender, son indicativas de que lo que restaba por analizar era la capacidad de los apelantes, como ciudadanos afiliados a un partido político opositor, para cuestionar el desembolso de gastos públicos para fines político partidistas, al amparo del Art. VI, Sec. 9 de nuestra Constitución. No obstante, acto seguido, el Tribunal a quo procedió -erróneamente a nuestro juicio-, a examinar el reclamo de los apelantes relacionado con el derecho a la libertad de expresión. ”