DAMIÁN MARRERO y OTROS, demandantes y recurridos, *v.* MUNICIPIO DE MOROVIS y HON. ÁNGEL ROSARIO, ETC., demandados y recurrentes.

*Número:* R-84-363     *Resuelto:* 17 de septiembre de 1984

*Luis Muñoz Rivera,* abogado de la parte recurrente; *Raúl Barrera Morales, Procurador General Interino,* abogado del interventor Estado Libre Asociado de Puerto Rico; *José Javier Colón Moura,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Se impone sin reservas un decreto de inconstitucionalidad del Art. 3.011 de la Ley Electoral que autoriza el uso irrestricto para fines político-partidistas de los automóviles de gobierno. Únicamente así, cumplimos con la encomienda

de "pasar juicio sobre la legalidad, a distinción de la sabiduría" del desembolso de unos fondos públicos. *P.S.P.* v. *E.L.A.*, 107 D.P.R. 590, 599 (1978).

## I

El Alcalde de Morovis, Ángel Rosario, colocó en el automóvil propiedad del Estado, oficialmente asignádole, tres insignias políticas correspondientes al Partido Popular Democrático (P.P.D.). Varios ciudadanos y la Unión de Desempleados de Morovis, Inc., solicitaron en su contra un *injunction* al amparo de la Ley de Derechos Civiles de Puerto Rico, 32 L.P.R.A. sec. 3524. En síntesis alegaron que dicha actuación era inconstitucional por constituir un uso ilegal e impermisible de fondos públicos que permitía "d[i]seminar un determinado mensaje ideológico con el que el ciudadano no necesariamente tiene que coincidir". Ap., pág. 14. En su apoyo invocaron el Art. VI, Sec. 9 de la Constitución,[1] su jurisprudencia interpretativa y varios reglamentos sobre control de gastos. Finalmente adujeron que "de generalizarse el uso de propiedad pública para fines de proselitismo político partidista se le haría un grave daño a la calidad de servicio público por virtud de que se agravaría aún más el clima de excesiva politización dentro de las agencias e instrumentalidades del Estado Libre Asociado de Puerto Rico". Ap., pág. 13.

El Tribunal Superior, Sala de Arecibo, declaró con lugar la acción al concluir que dicha actuación era contraria a la disposición constitucional antes aludida.

No conforme, a solicitud del Alcalde Rosario acordamos revisar.[2] Debido al alto interés público y urgencia del

---

[1] Reza:

"Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley."

[2] En cumplimiento de la Regla 21.3 de Procedimiento Civil, por estar envuelta la constitucionalidad de una ley, se ordenó notificar dicha impugnación al

asunto, resolvemos bajo la Regla 50 de nuestro Reglamento. A poco reflexionemos, notamos que la controversia plantea un conflicto entre la aludida disposición constitucional que prohíbe el uso de fondos públicos para fines privados y aquella parte del Art. 3.011 de la Ley Electoral,[3] 16 L.P.R.A. sec. 3108c, que autoriza al Gobernador, los legisladores, jefes de agencias y alcaldes a usar los vehículos de motor asignádoles para hacer campaña política.

## II

La confirmación de la sentencia procede con un decreto expreso de inconstitucionalidad del texto del Art. 3.011 antes aludido.

En *P.S.P.* v. *E.L.A.*, supra, nos pronunciamos *in extenso* sobre el historial de la disposición limitativa al uso de fondos públicos y la responsabilidad última del Poder Judicial de activamente evaluar la juridicidad de una asignación de fondos públicos. Bajo esa encomienda, la ilustrada sala sentenciadora determinó "que el colocar insignias político partidistas en el auto del Municipio de epígrafe es una práctica nociva al interés público. Ello así por cuanto es negativo al mejor desenvolvimiento de un sano proceso político democrático el que determinado partido político utilice fondos y/o recursos públicos para sus particulares fines privados. En la medida en que los fondos públicos se utilicen para propaganda político partidista se está afectando detrimentalmente

---

Secretario de Justicia para que éste compareciera. Así lo hizo, el pasado viernes día 14, por conducto del Procurador General. En esa misma ocasión presentaron sus alegatos los demandantes recurridos. Esta decisión se produce hoy —fecha hábil más próxima— luego del estudio de rigor y deliberación plenaria de todos los escritos.

(3) "Se prohíbe el uso de cualquier vehículo de motor, nave o aeronave, bien mueble o inmueble propiedad del Estado Libre Asociado o sus municipios, a los fines de hacer campaña política a favor o en contra de cualquier partido político o candidato. *Lo anterior no aplicará a los vehículos de motor asignados al Gobernador, a los legisladores, jefes de agencias y alcaldes por razón de sus funciones, pero en ningún caso se usará más de un vehículo oficial por cada cargo para estos fines.*" (Énfasis suplido.) 16 L.P.R.A. sec. 3108c.

el derecho de los demás electores. En todo caso la finalidad pública envuelta en este caso y que este Tribunal debe proteger y fortalecer coincide con el interés de los demandantes. Ésta es que todos los ciudadanos en Puerto Rico sientan la seguridad de que sus funcionarios públicos, irrespectiv[amente] de sus preferencias políticas particulares, le sirvan a la ciudadanía en general y no a determinado grupo de electores en particular". Sentencia, pág. 4.

Consideramos correcto ese razonamiento. Sin embargo, existe otro fundamento de mayor peso que sostiene la juridicidad del decreto y amplía sus contornos. Nos explicamos.

## III

Al presente, en materia electoral no se cuestiona seriamente el postulado de igualdad inmerso en nuestra Constitución. Históricamente ese ideal ha cobrado vida en el esquema integral financiero trazado por la Asamblea Legislativa para lograr paridad económica entre los partidos políticos y los candidatos. Este plan fue originalmente descrito en la Asamblea Constituyente por el delegado señor Padrón Rivera. Abogó por el día en que "si queremos unas elecciones fundamentalmente democráticas—tenemos que llegar a la conclusión de que los partidos políticos deben ponerse en un mismo nivel de potencialidad económica para *que los candidatos tengan la misma oportunidad de llegar al poder. . . .* Y el Estado debe tener la obligación de poner *en las mismas condiciones económicas a todos los candidatos para que el proceso electoral entrañe puramente, el principio democrático*". (Énfasis suplido.) 2 Diario de Sesiones de la Convención Constituyente 1401 (1952). Aunque esa aspiración no alcanzó linaje constitucional, posteriormente, en virtud de la Ley Núm. 110 del 30 de junio de 1957 —hoy derogada— tuvo alumbramiento estatutario. A tono con esa visión y hasta el presente, todas las leyes electorales han reconocido a los partidos el derecho a participar en un Fondo Electoral. La actual provee a cada uno, en años no eleccionarios, la can-

tidad máxima de $200,000 y en año de elecciones, $400,000. El uso autorizado de esos dineros es abarcador. Incluye "gastos de viaje" para beneficio de los candidatos nominados y todo gasto administrativo "de campaña y propaganda política" razonablemente concebible y necesario. Arts. 3.023 y 3.026 (16 L.P.R.A. secs. 3116 y 3118).

En *P.N.P.* v. *Tribunal Electoral*, 104 D.P.R. 741, 750-751 (1976) analizamos las premisas legislativas que inspiraron la génesis del Fondo Electoral. Allí apreciamos cómo "provee a todos los partidos políticos principales y por petición, irrespectivamente de las prédicas e ideologías promulgadas, una capacidad económica inicial e igualitaria para la divulgación de ideas y mensajes en nuestro país". Dicha decisión reconoció además los siguientes principios pertinentes: (1) "[n]uestro sistema de gobierno democrático se nutre del proceso político para elegir aquellos que representan al pueblo, reconociendo el derecho de los ciudadanos a organizarse en grupos de opinión con carácter de partidos políticos y proponer candidatos de su predilección"; (2) "[a]nte los adelantos técnicos de comunicación rápida, directa y masiva, el libre intercambio y la fluidez de ideas y la discusión en torno a los asuntos públicos y las cualificaciones de los candidatos, *dependen en gran medida de la capacidad económica de éstos y los partidos políticos*"; (3) "[e]l mensaje personal de antaño en las lides electorales puertorriqueñas es hoy la excepción, descansándose cada vez más en los medios electrónicos de difusión moderna. Ante este fenómeno, y el costo que ello exige, las contribuciones del ciudadano a sus respectivos partidos políticos son vitales para el desenvolvimiento y desarrollo del proceso democrático"; (4) "[a]un cuando no existe una correlación entre los resultados electorales y la capacidad económica de un partido político o candidato —ya que en adición entran en juego un sinnúmero de factores tales como naturaleza de las controversias, organización, liderazgo, destreza, prestigio, control y extensión de información y publicidad— *las contribuciones económicas y por*

*ende, la solvencia de los partidos políticos afectan positiva o negativamente y en gran medida los factores mencionados y por ende el desenlace final*"; y (5) "[e]stimamos que en el contexto constitucional expuesto, son cognocibles, como objetivos legítimos consustanciales al proceso democrático, *medidas razonables tendentes a disminuir las diferencias económicas y ventajas entre los partidos y candidatos por razón de desigualdades en riqueza,* a la par que evitar contribuciones cuantiosas e irrestrictas que pudieran comprometer el curso ulterior del gobierno en orden a influencias indebidas o favoritismos por razón de tales aportaciones".

■ Los principios expuestos gobiernan la solución de autos. La disposición de ley que autoriza el uso de vehículos oficiales a ciertos funcionarios para campaña partidista, crea una clasificación legislativa que favorece únicamente a los funcionarios incumbentes. Toca íntimamente el ámbito político operacional y afecta los derechos de todos los electores y candidatos, sean o no miembros del partido que los eligió.

¿Cómo justificar ese desembolso frente a candidatos no incumbentes? Advertimos que mediante el uso partidista ilimitado de tales vehículos se logra directamente una ventaja económica. De hecho, cuando aritméticamente se proyecta esa utilización en toda la extensión territorial del país, vías estatales y municipales por los alcaldes y legisladores incumbentes, todos los indicadores son que el desembolso de fondos públicos es sustancial. Como cuestión de realidad es innegable que representa un subsidio adicional para "gastos de viaje", ya previstos y autorizados bajo el Fondo Electoral. Ese beneficio aumenta. Después de todo, para el Gobierno un galón de gasolina está exento del pago de arbitrios. No así para otros aspirantes.

■ En este contexto, no existe vínculo racional justificativo de trato desigual para distinguir entre incumbentes y aspirantes. Todos ellos tienen la misma necesidad de viajar y proveerse transportación para comunicar sus ideas, plata-

formas, programas y alternativas políticas a todos los electores del país. ¿Es que quienes no detentan el poder público no incurren en estos gastos? No es posible sostener tal proposición. Por supuesto, lo que aquí decidimos no se extiende al uso de esta propiedad, dictado por razones de seguridad.

La alegada dificultad de separar a veces el uso legítimo de un viaje puramente oficial —o aquel de carácter personal según autorizado por la reglamentación vigente— entremezclado con uno de campaña partidista, o su uso incidental, no es argumento para convalidar en campaña el uso irrestricto de tales vehículos. Es inquietante la autorización legislativa implícita en el precepto de ley de que los "jefes de agencias" puedan utilizar estos vehículos para gestiones políticas. Aun considerada su asignación como parte integrante y legítima de la remuneración que perciben, en este aspecto la clasificación se torna insostenible.

■ El concepto de igualdad económica conlleva que se aplique con todo rigor la noción de equivalencia artimética. De prevalecer el Art. 3.011 estaríamos perpetuando una disimilitud monetaria que derrotaría el propósito constitucional. Concederíamos precisamente unos subsidios gubernamentales superiores y cuantiosos a unos candidatos, dando ventaja sobre otros. Esa disparidad económica y trato desigual es constitucionalmente impermisible. Véase *P.S.P.* v. *Srio. de Hacienda*, 110 D.P.R. 313 (1980). De no eliminarla crearíamos un círculo vicioso difícil de superar.

## IV

■ Resta considerar el remedio judicial. El impacto sustancial que implicaría proveer un automóvil, suministrar gasolina y mantenimiento a todos los candidatos a alcalde, y a los puestos legislativos de los distintos partidos políticos —y lo oneroso e injustificado que resultaría para el erario— nos impide extender ese beneficio estatutario bajo la técnica adjudicativa expuesta en *Milán Rodríguez* v. *Muñoz*, 110 D.P.R. 610, 618 (1981) y seguida en *P.R.P.* v. *E.L.A.*, 115

D.P.R. 631 (1984). La única opción es decretar su inconstitucionalidad.

*Se dictará sentencia confirmatoria.*