EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Nelson Rosario Rodríguez, en su capacidad oficial como Comisionado Electoral del Partido Proyecto Dignidad<br><br>Recurrido<br><br>v.<br><br>Ricardo A. Rosselló Nevares<br><br>Recurrido<br><br><br>Gerardo Cruz Maldonado, en su carácter de Comisionado Electoral del Partido Popular Democrático (PPD)<br><br>Peticionario<br><br>Hon. Francisco Rosado Colomer, en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones;<br>Roberto Aponte Berríos, en su capacidad oficial como Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); Olvin Valentín Rivera, en su capacidad oficial como Comisionado Electoral del Partido Movimiento Victoria Ciudadana (MVC); Vanessa Santo Domingo, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista (PNP)<br><br>Recurridos<br>_____<br><br><br>Nelson Rosario Rodríguez, en su carácter oficial de Comisionado Electoral del Partido Proyecto Dignidad<br><br>Peticionario<br><br>v.<br><br>Ricardo A. Rosselló Nevares<br><br>Recurrido | CC-2021-0459<br><br>Cons. con<br><br>CC-2021-473 | Certiorari<br><br>2021 TSPR 112<br><br>207 DPR ____ |

Hon. Francisco Rosado Colomer, en su carácter de Presidente de la Comisión Estatal de Elecciones; Roberto Aponte Berríos, en su carácter de Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); Olvin Valentín Rivera, en su carácter de Comisionado Electoral del Partido Movimiento de Victoria Ciudadana (MVC); Gerardo Cruz Maldonado, en su carácter de Comisionado Electoral del Partido Popular Democrático (PPD); Vanessa Santo Domingo, en su carácter de Comisionada Electoral del Partido Nuevo Progresista (PNP)

Recurridos

Número del Caso:    CC-2021-459
                    cons. CC-2021-473

Fecha: 28 de julio de 2021

Tribunal de Apelaciones:

        Panel X

**CC-2021-459**

**Abogados de la parte peticionaria
Comisionado Electoral del
Partido Popular Democrático:**

        Lcdo. Jorge Martínez Luciano
        Lcdo. Emil Rodríguez Escudero

**Parte con Interés:**

**Abogado del Comisionado Electoral
Del Partido Independentista Puertorriqueño:**

        Lcdo. Juan M. Mercado Nieves

**Abogado del Comisionado Electoral
Proyecto Dignidad:**

        Lcdo. Nelson Rosario Rodríguez

**CC-2021-473**

**Abogado de la Parte Peticionaria**
**Comisionado Electoral Proyecto Dignidad:**

      Lcdo. Nelson Rosario Rodríguez

Materia: Resolución con Voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Integración de Sala Especial

ORDEN

En San Juan, Puerto Rico, a 22 de julio de 2021.

Debido a que la primera Sala Especial de Verano atendió la *Petición de Certiorari,* se constituye una Sala Especial de Verano integrada por el Juez Asociado señor Martínez Torres, como su Presidente, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez, para atender la *Solicitud de reconsideración* en el caso CC-2021-459 consolidado con CC-2021-473, Nelson Rosario Rodríguez, en su capacidad oficial como Comisionado Electoral del Partido Proyecto Dignidad v. Ricardo A. Rosselló Nevares; Gerardo Cruz Maldonado, en su carácter de Comisionado Electoral del Partido Popular Democrático (PPD); Hon. Francisco Rosado Colomer, en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones; Roberto Aponte Berríos, en su capacidad oficial como Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); Olvin Valentín Rivera, en su capacidad oficial como Comisionado Electoral del Partido Movimiento Victoria Ciudadana (MVC); Vanessa Santo Domingo, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista (PNP).

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nelson Rosario Rodríguez, en su capacidad oficial como Comisionado Electoral del Partido Proyecto Dignidad

Recurrido

v.

Ricardo A. Rosselló Nevares

Recurrido

Gerardo Cruz Maldonado, en su carácter de Comisionado Electoral del Partido Popular Democrático (PPD)

Peticionario

Hon. Francisco Rosado Colomer, en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones; Roberto Aponte Berríos, en su capacidad oficial como Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); Olvin Valentín Rivera, en su capacidad oficial como Comisionado Electoral del Partido Movimiento Victoria Ciudadana (MVC); Vanessa Santo Domingo, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista (PNP)

Recurridos

_____

Nelson Rosario Rodríguez, en su carácter oficial de Comisionado Electoral del Partido Proyecto Dignidad

Peticionario

v.

Ricardo A. Rosselló Nevares
Recurrido

CC-2021-0459

cons. con

CC-2021-0473

Hon. Francisco Rosado Colomer, en su carácter de Presidente de la Comisión Estatal de Elecciones; Roberto Aponte Berríos, en su carácter de Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); Olvin Valentín Rivera, en su carácter de Comisionado Electoral del Partido Movimiento de Victoria Ciudadana (MVC); Gerardo Cruz Maldonado, en su carácter de Comisionado Electoral del Partido Popular Democrático (PPD); Vanessa Santo Domingo, en su carácter de Comisionada Electoral del Partido Nuevo Progresista (PNP)

Recurridos

Sala Especial de Verano integrada por el Juez Asociado señor Martínez Torres como su Presidente, y los Jueces Asociados señor Kolthoff Caraballo, señor Feliberti Cintrón y señor Colón Pérez.

RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de julio de 2021.

A la *Solicitud de reconsideración* presentada por la parte peticionaria, Nelson Rosario Rodríguez, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Colón Pérez emitió un Voto particular disidente.

Bettina Zeno González
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nelson Rosario Rodríguez,
en su carácter oficial de
Comisionado Electoral del
Partido Proyecto Dignidad

    Peticionario

        v.

Ricardo A. Rosselló Nevares

    Recurrido

CC-2021-459
cons.con
CC-2021-473

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 28 de julio de 2021.

**¡Otro verano!**

En éste, una mayoría de la Sala constituida para entender en la solicitud de reconsideración presentada en la causa de epígrafe se ha negado a acoger la misma. Con su silencio, valida cierta determinación del Tribunal de Apelaciones -- conceptual y jurídicamente errada -- que tuvo como único efecto el permitir que el señor Ricardo A. Rosselló Nevares (en adelante, "señor Rosselló Nevares") fuese certificado como "delegado congresional" de Puerto Rico ante el Congreso de los Estados Unidos de América, en virtud de lo dispuesto en la Ley Núm. 167-2020, *infra*. De dicho proceder, enérgicamente disentimos. Esta, sin duda alguna, era

una de esas instancias donde este Tribunal tenía la obligación de reconsiderar su determinación del pasado 20 de julio de 2021.

Y es que, -- contrario a lo señalado en la equivocada *Sentencia* emitida por el foro apelativo intermedio --, no albergamos duda alguna de que la *Querella* al amparo del Art. 7.5 de la Ley Núm. 58-2020, conocida como *Código Electoral de Puerto Rico de 2020*, *infra*, presentada por el Comisionado Electoral del Proyecto Dignidad, el licenciado Nelson Rosario Rodríguez (en adelante, "licenciado Rosario Rodríguez"), fue llevada oportunamente ante la consideración del Tribunal de Primera de Instancia por lo que dicho foro poseía jurisdicción para entender en el asunto.[1] Así las cosas, el único foro que tuvo la oportunidad de recibir la prueba y evaluar la misma, correctamente resolvió que el señor Rosselló Nevares -- a la fecha de la elección especial en cuestión -- no cumplió con los requisitos dispuestos en ley para ocupar una de las seis (6)

---

[1] El Art. 7.5 del Código Electoral de 2020, *infra*, establece que:

> Cualquier Aspirante o Candidato nominado podrá ser descalificado como tal, por el Tribunal de Primera Instancia, cuando medie querella porque no cumple con los requisitos impuestos por la Constitución o la ley, o cuando se demostrare que ha violado cualesquiera de las disposiciones de esta Ley o de sus reglamentos. El Aspirante o Candidato impugnado deberá contestar bajo juramento dicha querella, dentro de los diez (10) días siguientes de haber sido notificada. Si el Tribunal de Primera Instancia, designado de conformidad con el Capítulo XIII de esta Ley, encontrare que de las alegaciones surge una controversia real, deberá citar a vista a ser realizada dentro de los diez (10) días de haber el querellado presentado su contestación. Dicho término podrá ser reducido por el Tribunal de Primera Instancia, según lo requieran las circunstancias del caso. 16 LPRA sec. 4615.

plazas como "delegado congresional" de conformidad con lo dispuesto en la Ley 167-2020, *infra*.[2]

---

[2] Toda vez que una mayoría de la Sala de Verano constituida para entender en la causa de epígrafe se negó a realizar el análisis constitucional que discutiremos en este escrito, nos vemos en la obligación de señalar que éstos también se equivocan gravemente al denegar el presente recurso y con su silencio dar a entender que el señor Rosselló Nevares cumple con los requisitos para ser "delegado congresional". Nada más lejos de la verdad.

Y es que, aún si concediéramos la constitucionalidad de la referida medida, -- cosa que rotundamente descartamos --, de una lectura del texto de la Ley Núm. 167-2020, *infra*, queda meridianamente claro que la intención expresa de la Asamblea Legislativa al redactar el referido estatuto fue que las personas que ocuparan los mencionados puestos de "delegado congresional" cumplieran con los requisitos taxativamente listados en ésta. En esa dirección, y de conformidad con lo dispuesto en la Exposición de Motivos de la Ley Núm. 167-2020, *infra*, y, particularmente, en su Art. 8, *infra*:

> Los candidatos a ser delegados especiales deberán ser mayores de edad; dominar los idiomas español e inglés; cumplir con las disposiciones del Artículo 7.2 de la Ley 58-2020; ser residentes de Puerto Rico o de Washington, DC. Asimismo, para participar de la elección, deberán comprometerse bajo juramento a defender el mandato del Pueblo expresado el pasado 3 de noviembre de exigir que Puerto Rico sea admitido como Estado de Estados Unidos; y deberán trabajar activamente a tiempo completo durante el término de su cargo para lograr ese fin. Cualquier persona que incumpla con alguno de estos requisitos podrá ser descalificado en el Tribunal de Primera Instancia de San Juan.

**En virtud de lo anterior, y luego de examinar toda la prueba presentada y admitida, el Tribunal de Primera Instancia, foro que tenía jurisdicción para entender en este asunto, determinó que el señor Rosselló Nevares -- quien fue electo mediante nominación directa en la mencionada elección especial -- <u>no</u> cumplió con los requisitos de residencia y domicilio electoral exigidos por el Art. 8 de la Ley Núm. 167-2020, *infra*.** Tal y como correctamente resolvió la ilustrada magistrada que presidió los procesos ante el foro primario, Hon. Rebecca de León, "para poder ser válidamente certificado como delegado al Congreso el [señor Rosselló Nevares] tenía que haber cumplido los requisitos del cargo dispuestos en el Artículo 8 de la Ley 167 a la fecha de la elección, […] lo que según la prueba, no ocurrió". Véase, *Sentencia* del Tribunal de Primera Instancia, pág. 17.

Según se desprende de la sentencia del foro primario, el testimonio que se escuchó en sala y la documentación que se desfiló reveló que al momento de celebrarse la elección especial el 16 de mayo de 2021, el señor Rosselló Nevares no residía en Puerto Rico ni en Washington, D.C. A juicio de la mencionada togada, -- quien tuvo la oportunidad de escuchar y ver la prueba ofrecida --, las actuaciones del señor Rosselló Nevares tanto previo al evento electoral, como posterior a éste, son contrarias a **"su testimonio evasivo, vacilante y mendaz"**. Véase, *Sentencia* del Tribunal de Primera Instancia, pág. 19. Coincidimos con dicha apreciación.

**Recordemos que se trata aquí de un candidato electo por nominación directa.** Como tal, y en lo relacionado al evento electoral que nos ocupa, -- el cual fue celebrado el 16 de mayo de 2021 --, ese tipo de voto fue contado durante el proceso de escrutinio. Así, y finalizado el referido proceso, el 1 de junio de 2021 se emitió la *Certificación* que declaró electo, como "delegado congresional", al señor Rosselló Nevares. Como cuestión de hecho, es a partir de ese momento que se sabe, de manera oficial, que éste último fue una de las personas electas al mencionado cargo. Es, por tanto, en ese preciso instante cuando los Comisionados Electorales de los diversos partidos políticos representados en la Comisión Estatal de Elecciones (en adelante, "C.E.E."), podían descargar la responsabilidad que les impone el Artículo 3.2 (1) del Código Electoral de Puerto Rico de 2020, *infra*;[3] utilizando para ello, claro está, el

---

Recordemos que los tribunales de primera instancia gozan de un amplio margen de discreción para llevar a cabo los procedimientos que presiden. *Cruz Vélez v. Comisión Estatal de Elecciones*, 2021 TSPR 34 (2021) (Colón Pérez, opinión de conformidad); *Pueblo v. Santiago Cruz*, 2020 TSPR 99, 205 DPR ___ (2020); *Citibank N.A. v. Cordero Badillo*, 200 DPR 724 (2018). Por eso, hemos recalcado que aquellas determinaciones que un tribunal inferior haga en el ejercicio de su sana discreción, "deben ser respetadas por los foros apelativos, a menos, claro está, que se demuestre arbitrariedad, un craso abuso de discreción, una determinación errónea que cause grave perjuicio a una de las partes, o la necesidad de un cambio de política procesal o sustantiva". *Rebollo López v. Gil Bonar*, 148 DPR 673, 678 (1999). Véase también, *Cruz Vélez v. Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión de conformidad); *Citibank N.A. v. Cordero Badillo*, *supra*. Tal no es el caso de autos.

[3] El Art. 3.2(1) del precitado cuerpo reglamentario dispone lo siguiente:

La Comisión será responsable de planificar, organizar, dirigir y supervisar el organismo electoral y los procedimientos de naturaleza electoral que, conforme a esta Ley, y a leyes federales aplicables, rijan en cualquier Votación a realizarse en Puerto Rico. En el desempeño de

vehículo procesal de la *Querella,* según contemplado en el Artículo 7.5 del precitado cuerpo legal. Así claramente se desprende de una lectura armoniosa de las disposiciones del Código Electoral de Puerto Rico de 2020, *infra*, que gobiernan este asunto,[4] y así correctamente lo hizo el licenciado Rosario Rodríguez. No cabía, pues, hablar aquí de falta de jurisdicción del Tribunal de Primera Instancia como muy acomodaticiamente, y a pedidos del Partido Nuevo Progresista, lo hizo el Tribunal de Apelaciones.

**Ahora bien, establecido lo anterior –– y más allá de pasar juicio sobre si el señor Rosselló Nevares cumplió o no con los requisitos estatutarios para ocupar el mencionado puesto de "delegado congresional"; exigencias que, a todas luces, éste no satisfizo ––, para el juez que suscribe, el presente caso resultaba ser también la ocasión perfecta para que mis compañeros de estrado, en el descargue de sus funciones como últimos intérpretes de nuestra Carta Magna, pasaran juicio sobre si la ley bajo estudio se ceñía o no, al mandato dispuesto en el Art. VI, Sec. 9, de la Constitución del Estado Libre Asociado de Puerto Rico.**

---

tal función tendrá, además, de cualesquiera otras dispuestas en esta Ley, los siguientes deberes:

> **(1) Cumplir y hacer cumplir las disposiciones y los propósitos de esta Ley. 16 LPRA sec. 4512.**

[4] En otras palabras, "[n]uestro sistema parte de la premisa de que el ordenamiento jurídico opera como un ente integrado y coherente", de modo que "no debemos limitarnos a interpretar o construir una disposición de manera aislada únicamente, sino que es preciso que nos cercioremos de que dicha interpretación o construcción tome en consideración el resto de la estructura jurídica correspondiente". J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial, InterJuris, 2019, págs. 41 y 43.

**Cláusula constitucional que expresamente prohíbe que se utilicen fondos públicos para fines privados.**

Nótese que, de éstos haber realizado dicho análisis, era forzoso concluir que estábamos ante otra instancia más donde -- ilegalmente -- se autoriza el uso de fondos públicos para fines patentemente privados. En esta ocasión, para promocionar una de las varias fórmulas de estatus en nuestro entorno sociopolítico, en este caso, la Estadidad. Ello, en una sociedad que se hace llamar democrática, -- y que enfrenta una seria crisis fiscal --, no debe tener espacio.

Si bien reconocemos que existe una norma de autolimitación judicial que -- como regla general -- procura que los planteamientos constitucionales no sean abordados cuando una controversia pueda resolverse mediante un análisis estatutario, somos de la opinión que existen determinados asuntos de tan alto interés público que -- por vía de excepción -- deben mover a este Tribunal a, como interpretes finales de nuestra Carta Magna, intervenir en los mismos.[5]

Recordemos que, con el paso del tiempo, la aplicación automática de la norma de autolimitación judicial, -- en distintos escenarios --, ha perpetuado la indiferencia, la

---

[5] Estamos conscientes que, "[c]omo regla general, evitamos decidir una cuestión constitucional si no es necesario hacerlo. Sin embargo, esa norma de autolimitación no nos faculta a reescribir un estatuto. Si el texto no permite una interpretación que salve la ley, tenemos que declararla inconstitucional". (Citas omitidas) *Senado de Puerto Rico v. Gobierno de Puerto Rico*, 203 DPR 62, 86 (2019).

ilegalidad y la injusticia.[6] El presente caso es otro ejemplo más de ello. Nos explicamos.

## I.

Los hechos medulares que dieron margen al presente litigio no están en controversia. Allá para el 30 de diciembre de 2020, la exgobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, firmó la Ley Núm. 167-2020, conocida como la *Ley para Crear la Delegación Congresional de Puerto Rico*, 16 LPRA 985 *et seq*. (en adelante, "Ley Núm. 167-2020"), a los fines de establecer: 1) las reglas para la celebración de una elección especial para escoger un grupo de compromisarios que tendrían la encomienda de exigir al Congreso de los Estados Unidos que admitiese a Puerto Rico como estado de esa nación; y, 2) la asignación de fondos públicos para la ejecutoria de dicha encomienda.

En la Exposición de Motivos de la Ley Núm. 167-2020, *supra*, la Asamblea Legislativa expresó que, en el descargue de su deber ministerial adoptaba la citada pieza legislativa para instrumentar el "mandato del Pueblo" a favor de la Estadidad, conforme a los resultados obtenidos en el plebiscito celebrado en el año 2020.[7] Véase, además, Art. 2 de la Ley Núm. 167-2020, 16 LPRA 895a.

---

[6] Véase, por ejemplo: *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, 2020 TSPR 119 (2020); *Com. CNP v. CEE*, 197 DPR 914 (2017); *A.A.R. Ex parte*, 187 DPR 835 (2013).

[7] Dicho plebiscito fue celebrado de conformidad con la Ley Núm. 51-2020, conocida como *Ley para la Definición Final del Estatus Político de Puerto Rico*, 16 LPRA sec. 939 *et seq*.

Así pues, el Art. 4 de la Ley Núm. 167-2020, *supra*, dispuso que la elección especial para escoger la "delegación congresional" sería administrada, organizada y realizada por la C.E.E. En atención a ello, y entre otras gestiones, la referida ley le ordenó a la C.E.E. anunciar la elección especial y llevar a cabo una campaña de educación masiva a los electores sobre dicho evento electoral. Véanse, Arts. 5 y 7 de la Ley Núm. 167-2020, 16 LPRA secs. 985d-e.

Mediante la elección especial de referencia, los electores y las electoras escogerían un total de seis (6) "delegados" que comenzarían sus labores en Washington, D.C., a partir del 1 de julio de 2021 y hasta el 31 de diciembre del 2024. Véase, Art. 2 de la Ley Núm. 167-2020, 16 LPRA sec. 985a. En cuanto a quienes podrían ser las personas elegidas, tanto en la Exposición de Motivos como en el Art. 8 de la precitada ley, 16 LPRA 985g, se esbozan los requisitos que éstos deberían cumplir para ser certificados como tal.[8]

---

[8] Tal y como se advierte desde la Exposición de Motivos de la Ley Núm. 167-2020, *supra*:

> Los delegados deberán ser mayores de edad; dominar los idiomas español e inglés; cumplir con las disposiciones del Artículo 7.2 de la Ley 58-2020; ser residentes de Puerto Rico o de Washington, DC. Asimismo, para participar de la elección, deberán comprometerse bajo juramento a defender el mandato del Pueblo expresado el pasado 3 de noviembre de exigir que Puerto Rico sea admitido como Estado de Estados Unidos; y deberán trabajar activamente a tiempo completo durante el término de su cargo para lograr ese fin. Cualquier persona que incumpla con alguno de estos requisitos podrá ser descalificado en el Tribunal de Primera Instancia de San Juan.

De otra parte, y respecto a los gastos permitidos de la delegación, así como los salarios de los compromisarios electos, la Ley Núm. 167-2020, *supra*, estableció que los mismos serían sufragados por los fondos asignados a la Administración de Asuntos Federales de Puerto Rico. **En lo referente a la asignación de fondos públicos para llevar acabo la aludida elección especial -- según trascendió por distintos medios de comunicación -- el pasado 16 de abril de 2021 el Gobernador Pedro R. Pierluisi Urrutia autorizó la asignación de $1.8 millones del erario para ello.**[9]

Así las cosas, y llegado el 16 de mayo de 2021, se celebró el evento electoral para escoger la mencionada "delegación congresional". **Pasados unos días, la C.E.E. certificó que, de los 2,358,923 ciudadanos y ciudadanas inscritos, la participación reportada para ese evento electoral fue de 3.92%.**[10] Asimismo, la referida agencia reportó que el señor Rosselló Nevares resultó electo bajo la columna de nominación directa o *write-in*, para ocupar uno de los seis (6) puestos de la "delegación congresional".[11]

---

[9] Véase, El Nuevo Día, AAFAF notifica a la Junta de *Supervisión reasignación de fondos para financiar la Elección Especial*, https://www.elnuevodia.com/negocios/economia/notas/aafaf-notifica-a-la-junta-de-supervision-reasignacion-de-fondos-para-financiar-la-eleccion-especial/ (última visita, 23 de julio de 2021).

[10] Véase, Primera Hora, *Disminuye a 3.92% la participación en la elección de los cabilderos por la estadidad*, https://www.primerahora.com/noticias/gobierno-politica/notas/disminuye-a-392-la-participacion-en-la-eleccion-de-los-cabilderos-por-la-estadidad/ (última visita, 23 de julio de 2021).

[11] Véase, *Certificación de Representantes a la Cámara – Elección Especial para Crear la Delegación Congresional de Puerto Rico*, https://ww2.ceepur.org/Home/Certificaciones. (última visita, 23 de julio de 2021).

A la luz de lo acontecido, el pasado 8 de junio de 2021 el Comisionado Electoral del Partido Proyecto Dignidad, el licenciado Rosario Rodríguez presentó una *Querella* al amparo del Art. 7.5 del Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4501 *et seq*. (en adelante, "Código Electoral de 2020"). En esencia, éste alegó que el señor Rosselló Nevares no cumplía con los requisitos establecidos en el Art. 8 de la Ley Núm. 167-2020, *supra*, para ser certificado como "delegado congresional". Particularmente, señaló que el señor Rosselló Nevares no era residente de Puerto Rico ni de Washington, D.C., y tampoco era un elector activo en Puerto Rico. Indicó, además, que este último estaba domiciliado y residía en el estado de Virginia, de modo que éste no podía ser certificado como "delegado congresional" por lo que procedía, como cuestión de derecho, que el Tribunal de Primera Instancia lo descalificara como tal.

Luego de varios incidentes procesales no necesarios aquí pormenorizar, el 22 de junio de 2021 el señor Rosselló Nevares presentó una contestación jurada a la *Querella* en su contra. De entrada, enfatizó que el foro primario carecía de jurisdicción sobre la materia para descalificarle como "delegado congresional", dado a que fue electo mediante el mecanismo de nominación directa o *write-in* y, por tanto -- a su entender -- nunca fue un candidato ni aspirante en el contexto de la Ley Núm. 167-2020, *supra*, ni del Código Electoral del 2020, *supra*. Afirmó en su escrito que estaba domiciliado en Puerto Rico, pero que su domicilio electoral

había cambiado en marzo de 2017 a la dirección #232 Upsala St., Urbanización College Park, San Juan, Puerto Rico 00921-4807, tras haber vendido su residencia en el Municipio de Guaynabo.

El señor Rosselló Nevares informó, además, que por razones de trabajo era residente de Virginia y de Washington, D.C., pero que su intención era regresar a la Isla. En lo relativo a su estatus electoral en el estado de Virginia, éste explicó que, en enero de 2021 -- cuando obtuvo la licencia de conducir de dicho estado -- quedó automáticamente inscrito como elector en esa jurisdicción.

Con tono similar, la Comisionada del Partido Nuevo Progresista, Vanessa Santo Domingo (en adelante, "Comisionada del PNP"), presentó una contestación a la *Querella*, mediante la cual incorporó por referencia las alegaciones responsivas presentadas por el señor Rosselló Nevares. De otra parte, el Comisionado Electoral del Partido Popular Democrático, Gerardo A. Cruz Maldonado (en adelante, "Comisionado del PPD"), el Comisionado Electoral del Partido Independentista Puertorriqueño, Roberto Iván Aponte Berríos (en adelante, "Comisionado del PIP"), y el Comisionado Electoral del Movimiento Victoria Ciudadana, Olvin Valentín Rivera (en adelante, "Comisionado de MVC"), comparecieron por separado y en apoyo a la solicitud de descalificación del señor Rosselló Nevares.

Tras varios trámites judiciales, -- entre ellos la notificación de un remedio provisional dictado por el

Tribunal de Primera Instancia, mediante el cual se le ordenó a la C.E.E. a abstenerse de certificar al señor Rosselló Nevares mientras se dilucidaban los méritos del caso de autos --, se pautó una vista evidenciaria para el 28 de junio de 2021. En dicha vista, se escuchó en sala el testimonio del señor Rosselló Nevares; del licenciado Rosario Rodríguez, Comisionado Electoral del Proyecto Dignidad; y, del señor Rolando Cuevas Colón, Secretario de la C.E.E.; además, se marcó cierta prueba documental.

Analizada la prueba testimonial junto a la documental, el 30 de junio de 2021 el foro primario emitió una detallada *Sentencia*, mediante la cual declaró *ha lugar* la *Querella* presentada por el licenciado Rosario Rodríguez. **Así, y luego de aclarar que tenía jurisdicción para atender el asunto, dicho foro razonó que al momento en que el señor Rosselló Nevares fue seleccionado por nominación directa como "delegado congresional", éste no cumplía con los requisitos de residencia ni de domicilio electoral establecidos en el Art. 8 de la Ley Núm. 167-2020, *supra*.** En consecuencia, el Tribunal de Primera Instancia resolvió que la elección de este último "estuvo viciada de nulidad, fue inoficiosa y no surte efectos jurídicos", por lo que ordenó la descalificación del señor Rosselló Nevares como delegado congresional.[12]

---

[12] Véase, *Sentencia* del Tribunal de Primera Instancia, pág. 20.

En desacuerdo con lo dictaminado por el foro primario, el 2 de julio de 2021 la Comisionada del PNP acudió ante el Tribunal de Apelaciones mediante recurso de apelación y en auxilio de jurisdicción. En sus escritos, ésta sostuvo que el Tribunal de Primera Instancia incidió al conceder un remedio provisional, asumir jurisdicción en el asunto y determinar que el señor Rosselló Nevares no cumplía con el requisito de residencia.

Oportunamente, el licenciado Rosario Rodríguez se opuso a la expedición del auxilio y solicitó la desestimación del recurso de apelación presentado por la Comisionada del PNP. Por igual, los comisionados el PPD, PIP y MVC, presentaron sus respetivos escritos en oposición. Finalmente, el señor Rosselló Nevares también compareció mediante *Moción informativa sobre radicación de Recurso de Certificación Intrajurisdiccional ante el Tribunal Supremo*.

Examinados los escritos presentados por todas las partes con interés en este pleito, el pasado 8 de julio de 2021, el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual revocó al Tribunal de Primera Instancia. En esencia, resolvió que, toda vez que a la fecha de presentarse la *Querella* objeto del presente litigio ante el Tribunal de Primera Instancia la C.E.E. no había emitido una *Certificación de Elección Final* con el nombre del señor Rosselló Nevares como "delegado congresional", el foro primario carecía de jurisdicción para considerar la misma. Concluyó, además, que de conformidad con lo pautado en el

Art. 10.15 del Código Electoral de 2020, *supra*, el licenciado Rosario Rodríguez carecía de legitimación activa para instar la *Querella*, pues no fue candidato en la elección especial de referencia.

Insatisfecho, el pasado 15 de julio de 2021 el Comisionado del PPD acudió ante nos mediante recurso de *certiorari.* En apretada síntesis, sostuvo que el foro apelativo intermedio erró al concluir que el Tribunal de Primera Instancia carecía de jurisdicción para descalificar al señor Rosselló Nevares, debido a que -- a su juicio -- el Art. 8 de la Ley Núm. 167-2020, *supra*, no dispone que la C.E.E. deba emitir un certificado de elección como prerrequisito para que un delegado pueda ser impugnado.[13] Por otro lado, planteó que el Tribunal de Apelaciones incidió al dictaminar que la legitimación activa para impugnar un delegado electo solo correspondía a otro delegado.

Paralelamente, el Comisionado del Proyecto Dignidad presentó un recurso de *certiorari*, donde solicitó que revocáramos la *Sentencia* emitida por el Tribunal de Apelaciones. Allí, arguyó que la Comisionada del PNP no contaba con legitimación activa para recurrir en nombre del señor Rosselló Nevares ante el foro apelativo intermedio.

Evaluadas las solicitudes de referencia, y tras consolidar ambos petitorios, una Sala Especial de Verano

---

[13] El Comisionado del PIP presentó el correspondiente alegato, donde expuso argumentos similares a los esbozados por el Comisionado del PPD.

compuesta por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, y los Jueces Asociados señores Rivera García, Feliberti Cintrón y Estrella Martínez, emitió una *Resolución* -- el 20 de julio de 2021, para ser específicos -- denegando expedir los recursos ante su consideración.[14]

Inconforme, el 22 de julio de 2021 el licenciado Rosario Rodríguez, Comisionado Electoral del Proyecto Dignidad, presentó una oportuna moción de reconsideración. En ésta, solicita la reconsideración del dictamen de la Sala Especial de Verano antes descrita y reitera que el señor Rosselló Nevares no cumple con los requisitos enumerados en el Art. 8 de la Ley Núm. 167-2020, *supra*. Entre otros argumentos, plantea que el Tribunal de Apelaciones erró al confundir el remedio judicial dispuesto en el Art. 7.5 del Código Electoral de 2020, *supra*, para la descalificación, con el remedio establecido en el Art. 10.5 del Código Electoral de 2020, *supra*, para la impugnación de una elección. El licenciado Rosario Rodríguez sostiene que es precisamente por este defecto en razonamiento que el foro apelativo intermedio concluyó que la querella en controversia fue presentada de forma prematura.

---

[14] Es menester aclarar que tanto la Jueza Presidenta Oronoz Rodríguez como el Juez Asociado señor Estrella Martínez disintieron de este proceder y, en consecuencia, hubiesen expedido los recursos de referencia. La Jueza Presidenta Oronoz Rodríguez emitió expresiones. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente.

De otra parte, arguye que, contrario a lo expresado por el foro *a quo*, la querella fue presentada en el único intervalo de tiempo viable. Ello, ya que no es hasta el 1 de junio de 2021 que se emitió la certificación declarando electo al señor Rosselló Nevares. Es decir, no es hasta ese momento que el Comisionado del Proyecto Dignidad adviene en conocimiento, de forma oficial y final, que el señor Rosselló Nevares -- por medio de nominación directa -- había ganado uno (1) de los seis (6) puestos como "delegado congresional". En fin, el licenciado Rosario Rodríguez concluye que "[l]a sentencia del [Tribunal de Apelaciones] tiene el efecto de inmunizar al querellado porque hace imposible presentar una acción de descalificación contra él". Véase, *Solicitud de reconsideración*, pág. 6.

Trabada así la controversia, y con el beneficio de la comparecencia de las demás partes con interés en el presente litigio, una mayoría de la Sala de Verano constituida para atender la solicitud de reconsideración presentada en la causa de epígrafe, se ha negado a acoger la misma. De ese proceder, enérgicamente disentimos.

Como ya hemos señalado, más allá de pasar juicio sobre si el señor Rosselló Nevares cumplió o no con los requisitos estatutarios para ocupar el mencionado puesto de "delegado congresional", -- exigencias que, a todas luces, éste no satisfizo --, para el juez que suscribe, el presente caso resultaba ser también la ocasión perfecta para que este Foro, en el ejercicio de sus funciones como intérpretes

finales de nuestra Carta Magna, pasara juicio sobre si la ley bajo estudio -- entiéndase, la Ley Núm. 167-2020, *supra* -- se ceñía, o no, al mandato dispuesto en el Art. VI, Sec. 9, de la Constitución del Estado Libre Asociado de Puerto Rico. Nos explicamos.

II.

A.

Como es sabido, el Art. VI, Sec. 9, de la Constitución del Estado Libre Asociado de Puerto Rico establece que **"[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley"**. Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1. Al interpretar el texto de la precitada cláusula constitucional, este Tribunal ha afirmado que ésta no guarda misterio alguno, sino que de forma expresa garantiza el papel protagónico de la noción de *finalidad pública* en el uso del dinero del País. *Báez Galib v. C.E.E.*, 152 DPR 382, 395 (2000); *P.P.D. v. Gobernador I*, 139 DPR 643, 686 (1995); *P.I.P. v. C.E.E.*, 120 DPR 580, 606 (1988).

Así pues, ese interés público -- esa finalidad -- que debe guiar las actuaciones de los distintos organismos gubernamentales, debe resultar en el más razonable acomodo entre los diversos intereses particulares de la ciudadanía, y en ajuste a los tiempos. *P.P.D. v. Gobernador I*, *supra*. Véase, también, *P.I.P. v. C.E.E.*, *supra*. **Es decir, la concepción de lo que constituye el término *fin público* no**

**es estática, "sino que está ligad[a] al bienestar general y
[…] tiene que ceñirse a las cambiantes condiciones
sociales".** (Énfasis suplido). *P.P.D. v. Gobernador I*, *supra*.

Consecuentemente, por imperativo constitucional, los
distintos entes gubernamentales pueden autorizar el uso de
fondos públicos cuando las motivaciones y objetivos
contemplados para ello redunden en el beneficio y el
bienestar de la ciudadanía. *P.P.D. v. Gobernador I*, *supra*.
Véase, también, *Aponte Rosario v. Presidente Comisión
Estatal de Elecciones*, 2020 TSPR 119 (2020) (Colón Pérez,
opinión disidente); *Báez Galib v. C.E.E.*, *supra*, pág. 406;
*Mun. de Quebradillas v. Corp. Salud Lares*, 180 DPR 1003,
1017 (2011). Ello es así, pues, a diferencia de las personas
particulares, quienes pueden actuar para variados fines --
sean públicos o privados -- "[l]a búsqueda de un fin de
interés público es la condición positiva de toda actuación
estatal". *Báez Galib v. C.E.E.*, *supra*. Véase, también,
*Aponte Rosario v. Presidente Comisión Estatal de Elecciones*,
*supra* (Colón Pérez, opinión disidente); *P.I.P. v. C.E.E.*,
*supra*.

Cónsono con ello, hemos sentenciado que en una sociedad
democrática se le otorga amplia facultad al Poder Ejecutivo
y al Poder Legislativo para asignar fondos públicos -- ya
sea a entidades públicas, semipúblicas o privadas -- siempre
que cumplan con una función social y cuando el propósito de
éstos sea colaborar en el desempeño de alguna labor
gubernamental. Véase, 2 DIARIO DE SESIONES DE LA CONVENCIÓN

CONSTITUYENTE 904-908 (1952). Véase, además, *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente); *P.S.P. v. ELA*, 107 DPR 590, 600 (1978). En ese sentido, los fondos del erario nunca se deben asignar "para el fomento de empresas privadas, ni para el beneficio de personas o entidades particulares en su condición como tales". *Íd.* Véase, también, 2 DIARIO DE SESIONES DE LA CONVENCIÓN CONSTITUYENTE, *supra*.

Por igual, resulta impermisible la asignación de fondos públicos:

> [q]ue infrinjan otras disposiciones constitucionales, como lo es la igual protección de las leyes, la prohibición contra el uso de propiedades o fondos públicos para fines sectarios o el sostenimiento de instituciones educativas que no sean las del Estado, así como cualquier otro derecho que emane del Pueblo, conforme al sistema democrático que impera en nuestro País. *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente); *P.S.P. v. ELA*, *supra*. Véase, además, *Asoc. de Maestros v. Depto. de Educación*, 200 DPR 974 (2018) (Colón Pérez, opinión disidente); *Asoc. Maestros P.R. v. Srio. Educación*, 137 DPR 528 (1994) (Fuster Berlingeri, opinión de conformidad); *Lemon v. Kurtzman*, 403 US 602 (1971).

De modo que, según podemos colegir de lo antes expuesto, la concesión de fondos públicos debe obedecer unos estrictos parámetros constitucionales.

**En esa dirección también, y ya más en lo relacionado al uso de fondos públicos para adelantar agendas político-partidistas, este Tribunal ha sido enfático al expresar que bajo las restricciones constitucionales antes descritas no se puede autorizar dinero del erario para tales fines.**

Véase, por ejemplo, *Miranda v. C.E.E.*, 141 DPE 775 (1996); *P.P.D. v. Gobernador I*, *supra* (prohibición de publicidad gubernamental con connotaciones político-partidistas); *Marrero v. Mun. de Morovis*, 115 DPR 643 (1984) (prohibición de uso de vehículos públicos para campañas político-partidistas). **Y es que, cuando los propósitos de una legislación están dirigidos únicamente a adelantar una agenda político-partidista, la medida queda huérfana de un fin público discernible y definido.**

**Cónsono con lo anterior, y en lo pertinente al asunto que nos ocupa, en el pasado hemos sentenciado que "[d]ebido a que la Constitución del Estado Libre Asociado de Puerto Rico no favorecía, ni favorece, alternativa de estatus alguno", utilizar los fondos públicos para adelantar la causa de una fórmula en particular es contrario al mandato constitucional.** (Énfasis suplido). *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente). Véase, además, *P.P.D. v. Gobernador I*, *supra*. Tal es el caso de autos.

B.

Dicho ello, es menester dejar meridianamente claro aquí que la determinación que realiza un ente gubernamental en cuanto a lo que constituye un fin público -- como regla general -- goza de gran deferencia por parte de los tribunales. *Báez Galib v. C.E.E.*, *supra*, págs. 395-96; *P.S.P. v. ELA*, *supra*. Empero, esta deferencia subsistirá en la medida en que la legislación en cuestión "esté enmarcada

dentro del esquema constitucional y aunque como magistrados discrepemos personalmente de la bondad de los actos legislativos". *P.I.P. v. C.E.E.*, *supra*, pág. 611. Véanse, además, *Báez Galib v. C.E.E.*, *supra*, págs. 394-96; *P.P.D. v. Gobernador I*, *supra*.

A fin de cuentas, en nuestro rol como garantes e intérpretes finales de la Constitución del Estado Libre Asociado de Puerto Rico, no nos queda vedada la revisión judicial de la determinación de lo que una entidad gubernamental considere como fin público. *Íd.* Por el contrario, la tarea que nos ha encomendado el constitucionalismo moderno es precisamente la de juzgar la validez de las actuaciones de los demás poderes gubernamentales en torno al uso de fondos públicos para fines que éstos consideran como públicos. *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente); *P.I.P. v. C.E.E.*, *supra*. Así, es dentro de los parámetros que impone la doctrina de separación de poderes, que nos vemos obligados a actuar con particular recelo, prudencia y deferencia hacia la voluntad legislativa o la ejecutiva. *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente); *P.P.D. v. Gobernador I*, *supra*, pág. 685; *P.I.P. v. C.E.E.*, *supra*.

Ahora bien, y reconociendo que nuestra Constitución se impone sobre cualquier otra legislación, la aludida deferencia "no puede desembocar en el absurdo de que este

Tribunal se cruce de brazos y permita que se [continúen] derog[ando] fondos públicos para un fin claramente contrario a lo que el Art. VI, Sec. 9 de nuestra Constitución exige". *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, *supra* (Colón Pérez, opinión disidente); *PNP v. Calderón González*, 170 DPR 268, 294 (2007); *Báez Galib v. C.E.E.*, *supra*, pág. 396; *P.I.P v. C.E.E.*, *supra*, pág. 612.

Es, pues, a la luz del Derecho antes expuesto que este Tribunal debió haber resuelto la controversia bajo estudio. Toda vez que una mayoría de la Sala de Verano constituida para entender en la solicitud de reconsideración presentada en el presente caso no lo hizo, procedemos -- desde este Voto Particular Disidente -- a así hacerlo.

III.

Conforme mencionamos anteriormente, en el caso de marras una mayoría de los integrantes de la Sala de Verano constituida para entender en la solicitud de reconsideración presentada en el mismo, con su silencio, erróneamente concluye que el señor Rosselló Nevares cumple con los requisitos para ser certificado como "delegado congresional". Al así hacerlo, una vez más, -- y a pesar de que en este escrito se lo planteamos --, ignoran el claro mandato constitucional que les obliga y, por el contrario, le imprimen validez a una ley, -- entiéndase, la Ley Núm. 167-2020, *supra* --, a todas luces inconstitucional. De ese proceder, enérgicamente disentimos.

Y es que, de una lectura detenida y desapasionada del texto de Ley Núm. 167-2020, *supra*, se desprende que ésta no logra articular objetivo alguno que propenda al sostenimiento y funcionamiento de las instituciones del Estado. Más bien, dicha ley pretende validar el resultado de un plebiscito cuya base legal padece de igual defecto que la pieza legislativa hoy bajo estudio.

De esta forma -- y haciendo caso omiso a que la finalidad pública perseguida en el uso de fondos públicos debe resultar en el más razonable acomodo entre los diversos intereses particulares de la ciudadanía, y en ajuste a los tiempos -- tanto la Asamblea Legislativa como el Ejecutivo continúan autorizando el desembolso del dinero del Pueblo para promocionar y adelantar una agenda político-partidista.[15] Tal actuación es ilegal e inconstitucional. De lo anterior, no albergamos duda alguna.

**Ante esa realidad, nos vemos en la obligación de reiterar ciertas expresiones emitidas por esta Curia, hace ya varias décadas atrás, en *P.P.D. v. Gobernador I*, *supra*,**

---

[15] No olvidemos que muchas son las necesidades del País -- en los ámbitos de seguridad, salud y educación -- como para permitir la erogación del dinero de los y las contribuyentes en agendas político-partidistas. Lamentablemente, y aun cuando el caso de autos nos daba la oportunidad para, en un acto de sensatez judicial, detener la repartición de fondos públicos para fines privados, una mayoría de mis compañeros de estrado prefieren no hacerlo.

Con su proceder, éstos permiten el desembolso de aproximadamente **$4.3 millones de dólares del Pueblo de Puerto Rico** para crear una "delegación congresional" que tendrá como única tarea cabildear al Congreso de los Estados Unidos para que Puerto Rico sea admitido como estado de los Estados Unidos de América. Tal derroche de fondos públicos claramente descansa sobre la agenda particular de adelantar una sola fórmula de estatus, la Estadidad. **Sin lugar a duda, tales propósitos no constituyen un fin público que podamos validar.**

**para recordarles a aquellos y aquellas que dirigen nuestro País que:** "los fondos públicos provienen de todos los [y las] contribuyentes del [P]aís y del más amplio espectro político, por lo que no son privativos de quienes políticamente ostentan las riendas del [P]aís durante determinado cuatrienio". (Énfasis suplido) *P.P.D. v. Gobernador I*, *supra*, pág. 687.

Consecuentemente, y toda vez que la Ley Núm. 167-2020, *supra*, no sirve un fin público y sólo logra la erogación ilegítima e inconstitucional del dinero del Pueblo, en el caso de autos resultaba en un ejercicio superfluo evaluar si el señor Rosselló Nevares cumplió o no con los requisitos estatutarios para ocupar uno de los puestos a "delegado congresional".

IV.

Es, pues, por los fundamentos antes expuestos, que enérgicamente disentimos. Como correctamente señala el aquí peticionario, licenciado Rosario Rodríguez, procedía que este Tribunal reconsiderase su dictamen del pasado 20 de julio de 2021.

Ángel Colón Pérez
Juez Asociado